**Kary Leslie KELLY, Plaintiff-Appellee,**

v.

**Linda Gail Rambo KELLY,
Defendant-Appellant.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Aug. 21, 1984.

Permission to Appeal Denied by
Supreme Court Nov. 5, 1984.

Arthur E. McClellan, Gallatin, for defendant-appellant.

James E. Walton, Springfield, for plaintiff-appellee.

## OPINION

KOCH, Judge.

Kary L. Kelly was granted an absolute divorce from his wife Linda Gail Rambo Kelly by the Domestic Relations Court of Robertson County. Mrs. Kelly was awarded custody of the couple's minor daughter. By this appeal, Mrs. Kelly takes issue only with that part of the trial court's decision relating to the amount and nature of the child support the trial court required Mr. Kelly to provide and with the manner in which the trial court divided the couple's jointly owned property. For the reasons stated herein, we affirm the decision of the trial court to grant an absolute divorce to Kary L. Kelly. However, we vacate the decision of the trial court to award custody of the couple's minor daughter to Linda Gail Kelly as well as the trial court's decision relating to child support. We also vacate the trial court's decision with regard to the division of jointly held marital property and remand the case for further proceedings.

Kary L. Kelly, presently 44 years of age, married Linda Gail Rambo Kelly, presently 32 years of age, on January 24, 1969. This was Mr. Kelly's second marriage. It was Mrs. Kelly's first. The couple has one daughter, Mellisa Dawn Kelly, who is now fourteen years of age.

On May 7, 1982, Mr. Kelly filed a complaint in the Domestic Relations Court of Robertson County seeking an absolute divorce from his wife on the ground of cruel and inhuman treatment. He also requested custody of the couple's daughter. Mrs. Kelly filed an answer and counterclaim for divorce on May 21, 1982 alleging that her husband was also guilty of cruel and inhuman treatment. Mrs. Kelly also requested custody of the couple's daughter.

The trial court, sitting without a jury, heard proof on February 9, 1983 and again on August 4, 1983. On November 4, 1983, pursuant to his memorandum opinion filed on October 15, 1983, the trial court entered an order granting Mr. Kelly a divorce based upon cruel and inhuman treatment. He awarded custody of Mellisa to Mrs. Kelly and directed that Mr. Kelly pay $35 per week in child support. The trial court also divided the couple's jointly held marital property but made no award of alimony because none was requested.

The Kellys' marriage was punctuated by discord and strife almost from its inception. The couple has freely admitted to repeated threats of bodily injury, acts of physical abuse, sexual discord, and general disregard for each other and the interests of their child. Mr. Kelly concedes that he struck his wife on numerous occasions and that he threatened her with injury or worse. Mrs. Kelly admits that she has a severe drinking problem. She also admitted to an adulterous relationship. She has attempted to commit suicide on several occasions.

Mr. Kelly has been employed as an hourly worker by Peterbilt Motor Company in Nashville, Tennessee for approximately thirteen years. Mrs. Kelly worked outside the home only sporadically during the marriage. For a majority of the time, she stayed at home for the purpose of raising her daughter as well as Mr. Kelly's four children from his first marriage. Even though Mr. Kelly supplemented his regular income with other jobs, he had a reputation of not paying his bills.

During their marriage, Mr. and Mrs. Kelly accumulated a small amount of jointly owned property. This consisted primarily of their home in Whitehouse, a .67 acre tract of land purchased from Mr. Kelly's

aunt and uncle, several vehicles, and other household furnishings.

▮ This is a divorce action decided by the trial court without a jury. The Supreme Court of Tennessee, citing *Evans v. Evans*, 558 S.W.2d 851, 854 (Tenn.App. 1977), has ruled that in such cases, trial courts are vested with broad discretion in adjudicating the rights of the parties. *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn.1983). Decisions based upon this discretion are entitled to great weight. *Edwards v. Edwards*, 501 S.W.2d 283, 288 (Tenn.App.1973). Thus, in such cases, the role of this Court is to review the record of the trial court de novo with the presumption that the trier of fact acted correctly unless the evidence preponderates otherwise. *Farrar v. Farrar*, 553 S.W.2d 741, 743 (Tenn.1977). See also Tenn.R.App.P. 13(d) and *Walker v. Walker*, 656 S.W.2d 11, 14 (Tenn.App.1983).

▮ When this Court is reviewing a record de novo on appeal, we are called upon ultimately to pass upon the correctness of the result reached in the proceeding below, not necessarily the reasoning employed to reach the result. Our Courts have held that a correct judgment of a trial court should not be reversed on appeal merely because it was based upon an insufficient or wrong reason. *Adams v. Underwood*, 225 Tenn. 428, 446, 470 S.W.2d 180, 187 (1971); *Chambers v. Chambers*, 92 Tenn. 707, 714, 23 S.W. 67, 68 (1893); and *Sparkle Laundry & Cleaners, Inc. v. Kelton*, 595 S.W.2d 88, 94 (Tenn.App.1979).

▮ In this case, our ability to attach the presumption of correctness to the trial court's decision has been hampered by the absence of any findings of fact and conclusions of law by the trial judge or any other explanation of the rationale used to achieve the final result. Other than a transcript of the proceedings, we are presented with a memorandum opinion and order which, without elaboration or explanation, grants the divorce to the husband, awards custody of the child to the wife, and divides the jointly held property. In a record containing material evidence adverse to the positions taken by each spouse, we will not make our decision by attempting to discern the reasons for the trial court's decision.[1] Rather we will proceed to review the record de novo. Since the trial court made no findings of fact, there is nothing in this record upon which the presumption of correctness contained in Tenn.R.App.P. 13(d) can attach.

▮ Our independent review of the evidence contained in this records leads us to the conclusion that there is ample evidence to support the trial court's decision to grant the divorce to Mr. Kelly based upon cruel and inhuman treatment. While Mr. Kelly's conduct during this marriage is far from exemplary,[2] Mrs. Kelly, by her own admission, engaged in an adulterous relationship during their marriage, abandoned her family repeatedly, had a serious drinking problem, and attempted to commit suicide on several occasions. Her assaults against her husband with a pistol and repeated attempts to have him arrested constitute a willful, persistent, and continuing course of abusive and humiliating treatment of her husband.

▮ The custody of the Kellys' minor daughter presents a more troublesome question.[3] When this Court is called upon to deal with child custody matters, its decisions are guided by what is determined to be in the best interests of the child. *Luke v. Luke*, 651 S.W.2d 219, 221 (Tenn.1983)

---

1. As noted by Justice Drowota, without findings of fact or conclusions of law, we do not know what was, in fact, considered by the trial court. *Fisher v. Fisher*, 648 S.W.2d 244, 245 (Tenn. 1983).

2. Mr. Kelly's admitted physical abuse of his wife also demonstrates that he was not entirely without fault.

3. The qualifications of both Mr. and Mrs. Kelly to have custody of their daughter also weighed heavily on the trial court. He deferred making a decision relating to custody pending his receipt of reports by the Department of Human Services concerning the fitness of both parents. The record does not reflect that these reports were ever received or considered.

and *Bah v. Bah,* 668 S.W.2d 663, 665–66 (Tenn.App.1983). From our review of the evidence in this record, we conclude that there is ample evidence to support the trial court's decision that custody of Mellisa should not be awarded to Mr. Kelly. However, we also conclude, in the absence of findings of fact and conclusion based thereon, that the evidence contained in this record preponderates against the decision of the trial court to award custody of Mellisa to Mrs. Kelly.

Mrs. Kelly and her daughter left their home in April, 1982. Mr. Kelly filed the present divorce action in May, 1982. Within several months, Mrs. Kelly, by her own admission, moved into a house trailer with a married man whose wife eventually moved out several weeks after Mrs. Kelly and her daughter moved in. In November, 1982, Mrs. Kelly's drinking problem had become sufficiently severe that she was admitted to the hospital for treatment. She left her child in the care of the man who owned the house trailer. In December, 1982, Mrs. Kelly's parents filed an action in the Sumner County Juvenile Court seeking custody of Mellisa. Both Mr. Kelly and Mrs. Kelly were named as defendants. Following a hearing, the Sumner County Juvenile Court awarded custody of Mellisa to her maternal grandparents. Mrs. Kelly admitted that she was an unfit mother and that she should not have custody of Mellisa at that time.

Apparently Mellisa was not happy with this arrangement and ran away from her grandparents on several occasions. At the time of this trial, Mellisa was again living with her mother in the house trailer. The married man who owns the trailer apparently moved out to live with his brother when Mellisa returned. Mellisa has stated a strong preference to live with her mother.

■ Keeping in mind that there is a preference to permit a child to remain with its natural parents,[4] we conclude that the evidence in the record presently before us preponderates against awarding permanent custody of Mellisa to Mrs. Kelly. The decision of the Sumner County Juvenile Court[5] that Mrs. Kelly should not have custody of her daughter, as well as all the proof concerning Mrs. Kelly's adulterous behavior, her mental instability, her problems with alcohol, and her questionable ability to support herself and her daughter, lead us to conclude that Mrs. Kelly should not be given permanent custody of her adolescent daughter under these facts. We, therefore, vacate the decision of the trial court awarding Mrs. Kelly permanent custody of her daughter and, pursuant to *Greene v. Greene,* 43 Tenn.App. 411, 436, 309 S.W.2d 403, 414 (1957) and Tenn.Code Ann. § 27–3–128, remand this case to the trial court for the purpose of hearing further proof concerning the custody of the Kellys' daughter. Pending this hearing, Mellisa shall remain in the custody of Mrs. Kelly's parents pursuant to the decree of the Sumner County Juvenile Court unless this decree is properly vacated or modified.

In light of our disposition of the issue of custody of the Kellys' child, we vacate the trial court's decision with regard to a permanent child support order. However, pending a final decision by the trial court concerning Mellisa's permanent custody, Mr. Kelly is ordered and directed to pay to the person or persons having lawful custody of his daughter the sum of fifty dollars ($50) per week for child support and to maintain Mellisa as a dependent for the purpose of including her under the coverage of his group medical insurance plan furnished by his employer. This action is taken based upon the undisputed testimony in the record that fifty dollars ($50) per week is needed to support Mellisa and that Mr. Kelly is able to pay this amount. It is also based upon the statement in Mr. Kelly's brief filed in this Court that he will continue to maintain his daughter as a dependent for insurance purposes.

4. *Bryan v. Bryan,* 620 S.W.2d 85, 87 (Tenn.App. 1981).

5. The parties do not contest the validity or effectiveness of this decision.

■ The final issue presented on this appeal deals with the manner in which the trial court divided the couple's jointly owned property. While the record is silent concerning the reasons upon which the trial judge based his decision, the result was that a disproportionately large share of the property was given to Mr. Kelly. The division of jointly held property is not based upon the fault of the parties, *Fisher v. Fisher*, 648 S.W.2d 244, 247 (Tenn.1983) and *Salisbury v. Salisbury*, 657 S.W.2d 761, 769 (Tenn.App.1983), nor upon which party obtained the divorce. *Langford v. Langford*, 220 Tenn. 600, 604, 421 S.W.2d 632, 634 (1967).

■ In Tenn.Code Ann. § 36–4–121, the Legislature, recognizing the above-cited precedents, has delineated the criteria to be used by the courts in equitably dividing marital property in cases such as this one.[6]

■ This Court has also stated on prior occasions that in order to make an equitable distribution of jointly owned marital property, it should be presumed that ownership is equal until proven otherwise. *Salisbury v. Salisbury*, 657 S.W.2d 761, 770 (Tenn.App.1983). We have reviewed the entire record in this case in light of Tenn.Code Ann. § 36–4–121 and our prior precedents and are unable to find sufficient proof to support the trial court's decision to award the bulk of the Kellys' marital property to Mr. Kelly.

During their fourteen year marriage, the Kellys accumulated a modest amount of marital property. It was limited to two pieces of real property, including the family home, several cars, and some home furnishings. While the parties dispute the value of this property, when all marital property is considered, the effect of the trial court's decision was to grant Mr. Kelly at least ninety percent (90%) of all assets, including both pieces of real property.

While Mr. Kelly was the primary wage earner, Mrs. Kelly worked sporadically and contributed at least a portion of her earnings to the family. She also undertook to provide a home for Mr. Kelly, their own child, and Mr. Kelly's four children from his first marriage. Since the initiation of this action, Mrs. Kelly has assumed the primary responsibility for supporting her daughter. Mr. Kelly has contributed little of his time or money.

Based upon this record, we conclude that there is insufficient evidence to rebut the presumption of equal ownership of marital property and that the evidence preponderates against the manner in which the trial court divided the couple's marital property. Therefore, the decision of the trial court with regard to the division of the marital property is vacated, and the case is remanded to the trial court for further consideration and entry of findings of fact and conclusions pursuant to Tenn.Code Ann. § 36–4–121.

The decision of the trial court to grant an absolute divorce to Mr. Kelly is affirmed. The decision to grant custody of the couple's minor daughter and to provide for her support are vacated. The trial court's division of the Kellys' marital property is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

The costs in this appeal are taxed against Mr. Kelly.

LEWIS and CANTRELL, JJ., concur.

---

6. Tenn.Code Ann. § 36–4–121, formerly codified at Tenn.Code Ann. § 36–825, was substantially amended by Chapter 414, Public Acts of 1983. While this amendment became effective on September 1, 1983, it is remedial in nature and, therefore, should be applied in this case. *Saylors v. Riggsbee*, 544 S.W.2d 609, 610 (Tenn. 1976) and *Anderson v. Memphis Housing Authority*, 534 S.W.2d 125, 127 (Tenn.App.1975).