IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
AT KNOXVILLE

FILED

October 31, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

_____

| | ) | |
| --- | --- | --- |
| **FORTUNES UNTOLD, INC.**, | ) | Anderson County Circuit Court |
| | ) | No. 96LA0405 |
| Plaintiff/Appellant, | ) | |
| | ) | |
| VS. | ) | C.A. No. 03A01-9705-CV-00164 |
| | ) | |
| **T. C. WATSON**, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |
| | ) | |

_____

From the Circuit Court of Anderson County at Clinton.
**Honorable James B. Scott, Jr., Judge**


**John J. Britton**,
**Janet Strevel Hayes**,
LEWIS, KING, KRIEG, WALDROP & CATRON, P.C., Knoxville, Tennessee
Attorney for Plaintiff/Appellant.


**Philip R. Crye, Jr.**, MAGILL, CRYE & CIZEK, Clinton, Tennessee
Attorney for Defendant/Appellee.


OPINION FILED:

**AFFIRMED AND REMANDED**


**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**WILLIAMS, SR. J.**: (Concurs)

The plaintiff, Fortunes Untold, Inc. (Fortunes), brought an action for unlawful detainer in general sessions court against the defendant, T. C. Watson. That court ordered possession in favor of the plaintiff but awarded no damages. Plaintiff appealed to the trial court, which reached the same result, and then to this Court.

Mr. Don Manis was the sole witness for the plaintiff and testified that he is the owner of the plaintiff corporation. Fortunes entered into an installment sales contract to purchase the property from Velma F. Armstrong in June 1996. Title in fee simple was to be conveyed to buyer after the contract had been performed. It provided that "[b]oth parties understand that current tenant (occupant) has been given until July 1st, 1996 to remove his salvage and junk from the premises." Mr. Manis testified that it was his understanding that the property was leased to the defendant, Mr. T. C. Watson. He testified that, despite requests, Watson failed to remove cars from the property, which has been identified in the record as a junkyard. On July 1 there were approximately 240 automobiles and several hundred tires on the property. The detainer action was filed on July 3 and set for hearing July 23. He stated that he had a conversation with Watson who told him that, because it had been raining, he was having problems getting the cars off. The hearing was continued to August 13 to allow Watson additional time to remove the cars as well as other items from the property. When Manis went to the property on August 9th the cars had been removed, but he found tires and steel beams on the property.

Manis testified that he incurred expenses for the removal of the beams, several hundred tires and bulldozer expense which was necessary to move some of the cars as they were being removed from the lot in order that he could grade the lot. He also testified to additional expenses incurred in moving vehicles from another location he owned to the subject property as well as attorney's fees. Manis padlocked the property on July 1st. He later unlocked it so the removal could proceed. He testified that the persons he saw removing cars from the property were other than T. C. Watson.

Mr. T. C. Watson testified that he entered into a lease on the property several years ago. When he leased the property, it was being operated as a junkyard by Mr. Elmer Farmer. When he took possession there were approximately 20 to 25 cars on the property. The written lease expired

several years ago. Once the written lease expired, he continued making the lease payments to Ms. Armstrong. He testified that some four or five years ago he allowed a Mr. Bud Elliott to move his cars onto the property, approximately 200 to 230. Mr. Elliott then began paying the rent directly to Ms. Armstrong. Mr. Watson had not actively participated in the business for the past four to five years. Watson admitted receiving a letter dated April 30, 1996 from John Barbour, a real estate broker, which states as follows:

> I am glad to have met and talked to you over the telephone last evening. As we discussed, I have just listed the 5.95 acres for sale. Mr. & Mrs. Armstrong gave me your telephone number and wanted me to contact you so you would not be surprised when I put up the FOR SALE sign early next week.
>
> Mr. Armstrong said you told him you were ready to close down your business and suggested he sell the property. He offered to sell the property to you at a discount but you were not interested in buying it. You told him you would move your inventory of salvage metal.
>
> There are two items of immediate importance that must be done to market this property.
> 1)      To show the property I must have a way to get inside the fenced area. Is there a key to the lock on the gate you could let me use?
> 2)      Any buyer would want your salvage metal off the property so they could develop it for their own use. Please have everything off by the first week in July 1996.
>
> I thank you for your help and assistance in selling Mrs. Velma Armstrong's property.

He testified that when approached by Mrs. Armstrong, he told her that he had no interest in buying the property as he had no use for it. He testified that, when contacted by Mr. Manis, he advised Manis that he would talk to Bud Elliott and get everything off the property as soon as he could. After receiving the letter, he told Mr. Elliott that Mr. Elliott would have to remove his possessions from the lot. He testified that the steel beams were on the property when he took possession. He testified that the condition of the property on July 1, 1996, was about the same as it was when he first took possession.

At the conclusion of the evidence, the trial judge took the matter under advisement and subsequently opined that "[t]he Court is of the opinion, after hearing all of the proof, plaintiff has failed to carry the burden of proof as it relates to a legal bases [sic] upon which damages can be

awarded."

It is the appellant's position that the trial court, having awarded possession, was bound by T.C.A. § 29-18-125[1] to award damages.

Appellee counters that Plaintiff is not the proper entity to bring an unlawful detainer action as it does not fall within the meaning of T.C.A. § 29-18-104.[2] It is his further position that Fortunes failed to prove damages. In reviewing this record, it is apparent that Watson did not contest Fortunes' right to possess the property. This is evidenced by the following discussion between the court and respective counsel prior to the presentation of evidence:

> THE COURT: Gentlemen, a writ of detainer action is usually somebody is holding my property unlawfully from me and I want possession of it. What is this here?
>
> MR. CRYE: We don't dispute, Your Honor, and we make no claim that we're entitled to possession of this property. We don't say that we're entitled to it, and I guess Mr. Manis is entitled to it, him or Ms. Armstrong.
>
> THE COURT: So a writ of possession could, if, technically speaking, a writ [of] possession could issue right now for them to have lawful possession of this property is what you're saying.
>
> MR. CRYE: We're not saying -- that's right, Your Honor, we're not saying --
>
> THE COURT: So that issue is not before me.
>
> MR. CRYE: That's not before you.
>
> THE COURT: But the issue as to whether or not, as a result of any unlawful detainer, there has been damages is the only issue that I'm to pass on; is that right?
>
> MR. BRITTON: That's correct, Your Honor.

---

[1]**Monetary judgments for plaintiff.** -- In all cases of forcible entry and detainer, forcible detainer, and unlawful detainer, the judge of the court of general sessions trying the cause shall be authorized and it shall be his duty, if his judgment shall be that the plaintiff recover the possession, to ascertain the arrearage of rent, and interest, and damages, if any, and render judgment therefor.

[2]**Unlawful detainer defined.** -- Unlawful detainer is where the defendant enters by contract, either as tenant or as assignee of a tenant, or as personal representative of a tenant, or as subtenant, or by collusion with a tenant, and, in either case, willfully and without force, holds over the possession from the landlord, or the assignee of the remainder or reversion.

Thus, as to the parties before the court, it is apparent the only issue for the court to decide was whether Fortunes was entitled to recover damages against Mr. Watson.

This case was tried by the court sitting without a jury. Therefore, our review is *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. *Simmons v. O'Charley's, Inc.*, 914 S.W.2d 895, 902 (Tenn. App. 1995); Rule 13(d) T.R.A.P. However, where the trial judge does not make any findings of fact, there is nothing in the record upon which a presumption of correctness can attach. *Kelly v. Kelly*, 679 S.W.2d 458 (Tenn. App. 1984).

Unlawful detainer is the unjustifiable retention of the possession of lands by one whose original entry was lawful and of right, but whose right to the possession has terminated and who refuses to quit, as in the case of a tenant holding over after the termination of a lease, and in spite of a demand for possession by the landlord. Actions of unlawful detainer concern only the right of possession of the realty and differ from ejectment in that no ultimate question of title or estate can be determined. *Black's Law Dictionary* 581 (5th ed. 1979).

Our *de novo* review of this record reveals that it is undisputed that when Mr. Watson's written lease with the property owner expired he became a month-to-month tenant. Some four to five years prior to trial he allowed Bud Elliott to move his cars onto the property. At that time Mr. Elliott began paying the rent directly to the owner. Mr. Watson had not actively participated in the business for the past four to five years. In essence, Mr. Elliott became the tenant. The steal beams which Mr. Manis was required to remove were on the property when Mr. Watson took possession. Mr. Watson testified that the condition of the property on July 1, 1996, was about the same as it was when he first took possession.

In an unlawful detainer action, the injured party is entitled to damages sustained by virtue of the defendant's unlawful detention of the premises. *Simmons v. O'Charley's, Inc.*, 914 S.W.2d at 903. Thus, in order to recover damages, the plaintiff entitled to possession must demonstrate that such damages were proximately caused by the acts of the defendant. *Id*.

We have determined from our review of this record that the preponderance of the evidence is that any damages sustained by Fortunes resulted from the removal of items that were on the property at the time Mr. Watson initially took possession or belonged to persons other than Mr. Watson.  It results that the judgment of the trial court is affirmed.  Costs of this appeal are taxed to the appellant.

 

_____

FARMER, J.

_____

CRAWFORD, P.J., W.S. (Concurs)

_____

WILLIAMS, SR. J. (Concurs)