IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

March 7, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

E1999-01697-COA-R3-CV

| | |
|---|---|
| RAY GABRIELLE COX, | ) C/A NO. 03A01-9902-CV-00074 |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| | ) |
| | ) |
| v. | ) APPEAL AS OF RIGHT FROM THE |
| | ) ANDERSON COUNTY CIRCUIT COURT |
| | ) |
| | ) |
| ANDERSON COUNTY HIGHWAY | ) |
| DEPARTMENT and ANDERSON COUNTY, | ) |
| TENNESSEE, | ) |
| | ) HONORABLE JAMES B. SCOTT, JR., |
| Defendants-Appellants. | ) JUDGE |

For Appellants

DAVID A. STUART
Clinton, Tennessee

For Appellee

ROGER L. RIDENOUR
Ridenour, Ridenour & Fox
Clinton, Tennessee

O P I N I O N

AFFIRMED IN PART

REVERSED IN PART
REMANDED                                                        Susano, J.

In this tort action, the defendants appeal from an award of compensatory damages capped by the trial court at $130,000 pursuant to the Governmental Tort Liability Act ("GTLA").  They also seek to reverse the trial court's decision to assess them with discretionary costs of $3,440.98.  We affirm all of the trial court's judgment except the award of discretionary costs.

This action arises out of personal injuries sustained by the plaintiff in a one-vehicle accident on a rural road in Anderson County.  Ray Gabrielle Cox sued the Anderson County Highway Department and Anderson County (collectively "the County"), invoking provisions of the GTLA[1], and claiming that the dangerous condition of the roadway caused the accident.  After a bench trial, the court awarded Cox $130,000 in compensatory damages and $3,440.98 in discretionary costs, for a total award

---

[1]Cox alleges that the County is liable pursuant to T.C.A. § 29-20-203 (Supp. 1999), which provides, in pertinent part, as follows:

> (a) Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity.  "Street" or "highway" includes traffic control devices thereon.

> (b) This section shall not apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved....

Cox also alleges that the County is liable pursuant to T.C.A. § 29-20-205 (Supp. 1999), which provides, in pertinent part, as follows:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury:

> (1) Arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused....

of $133,440.98. The County appeals, raising the following issues:

> 1. Does the County have governmental immunity from the claims asserted by Cox?
>
> 2. Did the trial court correctly apportion fault between the County and the driver of the vehicle in which Cox was a guest passenger?
>
> 3. Can a governmental entity be assessed discretionary costs if to do so would cast it in judgment for an amount in excess of $130,000, the maximum allowable award under the GTLA?

I.

On the evening of August 16, 1993, at approximately 8:00 p.m., Cox, then 18 years of age, was a guest passenger in a minivan being driven by 16-year-old Dusti Dawn Howard. They were proceeding south on Carroll Hollow Road, a rural county road located in Anderson County. Howard estimates that she was driving between 20 and 30 miles per hour when her vehicle's right front wheel dropped off the edge of the pavement at a point where the road in her direction curved slightly to the right. Howard was unable to maneuver back onto the paved surface, and, as a consequence, she lost control of her vehicle. The vehicle traveled down a slope and eventually crashed into a tree approximately 146 feet from where it left the road.

As Howard was approaching the site of the accident, she was proceeding downhill. The investigating officer testified that the accident occurred in "what they call a holler." He also

3

stated that the roadway at that location is in a heavily-wooded area with, in the words of the officer, "hills on both sides of the roadway [that] blocked the sunset very early in the evening." He testified that the scene of the accident was dark when he arrived there at 8:36 p.m.

As a result of the accident, Cox suffered a fractured vertebra, which required surgery and physical therapy. She testified that she had been unable to work because of her injuries and had incurred medical expenses exceeding $131,977.

Cox filed this action against the County, alleging that the dangerous condition of the road and Howard's negligent driving,[2] in combination, were the proximate cause of the accident and her resulting injuries. The County filed an answer, denying that the road was in an unsafe condition and asserting that Howard's negligence was the sole proximate cause of the accident. Prior to trial, the court below granted the County's motion for partial summary judgment, finding, pursuant to the GTLA,[3] that the County's liability could not exceed $130,000.

A bench trial was held on January 13, 1999. Cox presented the testimony of Dr. Leighton Sissom, a consulting engineer, who testified regarding the condition of the road at the point where Howard left the paved surface and lost control of

---

[2]Cox filed a separate action against Howard. The parties settled that claim prior to the trial of the instant case.

[3]See T.C.A. § 29-20-404(a) (Supp. 1999)("A governmental entity...shall not be held liable for any judgment in excess of the limits of liability set forth in [T.C.A.] § 29-20-403..."); T.C.A. § 29-20-403(b)(2)(A) (Supp. 1999) (insurance must provide minimum coverage of $130,000 for death or bodily injury).

her vehicle. He explained that at the place where the vehicle went off the road, the pavement had narrowed by 20 inches, from 18 feet to 16 feet, 4 inches. A diagram prepared by Dr. Sissom shows that the pavement was 18 feet wide at a point some 22.5 feet back from where Howard's front right wheel went off the road. The diagram also shows the pavement narrowing from that maximum width of 18 feet down to a width of 16 feet, 4 inches, where Howard's vehicle left the road. Dr. Sissom's diagram, which was admitted into evidence as an exhibit, is attached as an appendix to this opinion.

Dr. Sissom also observed that there was no center line painted on the road, nor was there a white fog line on the pavement to mark the road edge. He stated that there were no signs posted to warn of the sudden narrowing of the pavement. Dr. Sissom further noted that the edge of the pavement was crumbling, and had sunk and deteriorated from erosion, which condition, he opined, "would tend to cause a vehicle running over it to roll to the right" and would "make[] it more difficult to control the vehicle." Dr. Sissom further testified that there was no shoulder to the road; thus, where the pavement stopped, there was a four to six inch drop off to the ground below, which was a hillside that sloped at a 50 degree angle. It was Dr. Sissom's testimony that as Cox's "vehicle progressed southward it simply ran out of pavement staying on its same course." He further opined that

> [i]t would be impossible...for a driver to
> regain control of the vehicle once the wheel
> dropped off of that four to six inch drop
> off. I just don't think it would be possible

5

> for the vehicle to come back under control
> after that.  It would then be aggravated by
> the slope of the roadway which would tend to
> cause the vehicle to roll to the right.

Dr. Sissom stated that, given the condition of the road, a vehicle traveling at only 15 miles per hour would be unable to regain control once a wheel dropped off the pavement.  Finally, Dr. Sissom expressed his opinion as to the cause of the accident:

> My opinion is that the driver simply ran out
> of road.  That the road narrowed 20 inches.
> That's a big space.  The road narrowed 20
> inches in a very short space and the
> narrowing took place where the roadway had
> sunk where the edge of the roadway, the
> shoulder had eroded away letting there be a
> major drop off.  There was no warning sign
> about the narrowing of the roadway...[and]
> there was no speed limit sign also in that
> direction.
>
> Q.    In your expert opinion, did the driver
> of the vehicle have any responsibility in
> this collision?
>
> A.    Oh, of course, yes, sir.

In its memorandum opinion, the trial court held that Cox had sustained damages of $550,000 as a result of the accident.  The trial court further held:

> First, this Court assigns to the Defendant,
> Dusti D. Howard,[4] seventy percent (70%) of
> the legal fault of this accident.  She was
> negligent in operating her vehicle so that
> the right wheel came too close to the edge of
> the road - the road was depressed and the
> edge had crumbled and she simply ran out of

_____

[4]Cox's action against the County had originally been consolidated with her action against Howard.  As indicated in footnote two to this opinion, Cox's suit against Howard was resolved by settlement prior to trial.  However, because the County had alleged Howard's comparative fault as a defense, the trial court addressed the relative fault of Howard.

6

road surface. When the right wheel dropped
and caught on the edge of the road, control
of the vehicle was irretrievably lost because
of the unsafe condition of the roadway and
road edge.

However, the County cannot escape a share of
legal fault for those conditions neglected by
the county - conditions that should have been
addressed so as to prevent the entrapment of
the vehicle. This Court finds that the
plaintiff has carried the burden of proof as
to the issue of waiving government immunity
under T.C.A. 29-20-203. The legal expression
of this finding is to find that the road was
"defective, unsafe or dangerous." The County
had actual knowledge that the roadway was
dangerous at the point where the accident
occurred for guard rails had been recommended
previous to the date of the accident. Guard
rails or the failure of installing guard
rails will not give rise to a waiver of
governmental immunity. However, the combined
facts of negligence issued forth by the proof
is sufficiently convincing to conclude that
reasonable inexpensive measures should have
been observed by the county to warn, repair
and prevent the dangerous condition created
by the neglect.

The trial court assessed the remaining 30% of fault to the

County, but limited the award of compensatory damages to $130,000

in accordance with the GTLA. After the trial, the court awarded

Cox discretionary costs in the amount of $3,440.98. This appeal

followed.

II.

In this non-jury trial, our review is *de novo* upon the

record with a presumption of correctness as to the trial court's

factual findings, unless the preponderance of the evidence is

otherwise. Rule 13(d), T.R.A.P.; **Wright v. City of Knoxville,**

898 S.W.2d 177, 181 (Tenn. 1995). The trial court's conclusions

7

of law, however, are not accorded the same deference. ***Campbell v. Florida Steel Corp.,*** 919 S.W.2d 26, 35 (Tenn. 1996); ***Presley v. Bennett,*** 860 S.W.2d 857, 859 (Tenn. 1993).

III.

A.

The first issue on appeal is whether the County has immunity from Cox's claims. The GTLA provides general immunity to all governmental entities, removing that immunity only in limited and specified instances. ***Kirby v. Macon County,*** 892 S.W.2d 403, 406 (Tenn. 1994). One of those instances is at issue here, namely T.C.A. § 29-20-203(a), which removes a governmental entity's immunity from suit "for any injury caused by a defective, unsafe, or dangerous condition of any street...or highway...."

Whether a particular site is "defective, unsafe, or dangerous" for the purpose of removing governmental immunity is a question of fact. ***Coln v. City of Savannah,*** 966 S.W.2d 34, 45 (Tenn. 1998). Thus, we must determine whether the evidence preponderates against the trial court's factual finding that the subject road was in "a defective, unsafe, or dangerous condition." *See **Wright,*** 898 S.W.2d at 181.

In determining whether a road is in a "defective, unsafe, or dangerous condition," the Supreme Court has instructed courts to "consider the physical aspects of the roadway, the

8

frequency of accidents at that place in the highway and the testimony of expert witnesses in arriving at this factual determination." **Helton v. Knox County,** 922 S.W.2d 877, 883 (Tenn. 1996)(quoting **Sweeney v. State,** 768 S.W.2d 253, 255 (Tenn. 1989)).

As previously indicated, Cox presented the testimony of an expert on the issue of whether the subject road was in a "defective, unsafe, or dangerous condition" at the time of the accident. Dr. Sissom testified that the roadway narrowed, unexpectedly, by 20 inches and that there were no signs to warn a motorist of this sudden narrowing, or to otherwise caution a driver about this condition. In addition, Dr. Sissom stated that there were other aspects of the roadway that contributed to its dangerous condition, *i.e.*, the lack of a center line, the absence of a fog line to mark the edge of the pavement, an eroding road edge, the lack of a usable shoulder, and a drop off of four to six inches from the pavement to the sloping hillside.

The County argues that the road is not "defective, unsafe, or dangerous" because there was no evidence of any prior accidents at the site. We reject the thrust of this argument. Although the frequency of accidents is a consideration in determining whether a roadway is dangerous, such evidence, or the lack thereof, is not necessarily determinative of the issue. *See* **Helton,** 922 S.W.2d at 884 ("the fact of, or absence of, prior accidents is only one element in the equation").

9

The County also argues that the condition of Carroll Hollow Road is not "unusual" in that there are countless other roads in Anderson County with the same conditions. While this may be the case, we note that Dr. Sissom testified that he could not recall having investigated a road "where so many problems came to bear at the very same point." Even assuming that these conditions are common to many county roads in Anderson County, this does not make the subject road any less dangerous; nor can the existence of these conditions on other roads in Anderson County serve to absolve the County of its responsibility to maintain the subject road in a safe condition. The evidence does not preponderate against the trial court's factual determination that the subject road was in a "defective, unsafe, or dangerous condition" at the time of the accident. *See* T.C.A. § 29-20-203(a). We base this determination *solely* upon the fact that the evidence is uncontradicted that the roadway unexpectedly narrowed by 20 inches at the site of the accident and that there was no signage to warn of this narrowing or to otherwise caution a driver regarding this condition. While each of the other matters noted by Dr. Sissom -- the lack of markings, the eroding road edge, the lack of a usable shoulder, and the drop off of four to six inches to the sloping hillside -- might or might not be sufficient, singularly or in some combination, to create a dangerous condition, these other features of the right-of-way and the topographical and vegetative features of the area certainly tended to make the narrowing and lack of signage more dangerous than would have been the case in the absence of these other conditions in this shaded "holler."

10

B.

The next question we must resolve is whether the County had notice, either actual or constructive, of the dangerous condition found by the trial court. *See* T.C.A. § 29-20-203(b). "Actual notice" has been defined as "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." *Kirby,* 892 S.W.2d at 409 (quoting *Texas Co. v. Aycock,* 227 S.W.2d 41, 46 (Tenn. 1950)(internal quotation marks omitted)). "Constructive notice" has been defined as "information or knowledge of a fact imputed by law to a person (although he [or she] may not actually have it), because he [or she] could have discovered the fact by proper diligence, and his [or her] situation was such as to cast upon him [or her] the duty of inquiring into it." *Kirby,* 892 S.W.2d at 409 (quoting *Black's Law Dictionary* 1062 (6th ed. 1990)(internal quotation marks omitted)). However, if a road was constructed in the defective condition complained of -- and has remained in that condition -- then no further notice, actual or otherwise, is required; rather, the governmental entity is charged with notice from the time of the defective construction. *See Glover v. Hardeman County,* 713 S.W.2d 73, 76 (Tenn.Ct.App. 1985).

The trial court found, in its words, that "[t]he County had actual knowledge that the roadway was dangerous at the point where the accident occurred for guard rails [sic] had been recommended previous to the date of the accident." The County

11

contends that this finding is erroneous because, so the argument goes, there is no evidence that the installation of guardrails was recommended to the County prior to the accident. We agree. The evidence clearly shows that it was only *after* the accident that the County received a request for the installation of guardrails at the location of the accident. The only notification that the County received before the accident concerning a "dangerous" condition on Carroll Hollow Road was a letter, received in 1992, complaining of overgrown brush obstructing visibility at an intersection approximately a quarter of a mile from the accident site. We fail to see how such a complaint, regarding a different section of the road, not in the vicinity of this accident, and a completely different condition, can be construed as giving the County notice of the dangerous condition at issue in this case, *i.e.,* the sudden narrowing of the road without cautionary signs.

We do find, however, that the notice requirement of T.C.A. § 29-29-203(b) has been satisfied in this case. The evidence preponderates that the road, as originally laid out, and as subsequently paved and re-paved prior to the accident, narrowed by 20 inches at the point where the plaintiff's vehicle left the paved surface. Mike Ellis, a former Anderson County Road Superintendent, testified that the State of Tennessee paved

12

Carroll Hollow Road in 1982 as a "state aid road."[5]  He quoted

from a document in the County's files:

> This was dated December 3rd, 1982.  Please be
> advised that the paving was completed on 10-
> 29-82 and hereby returned to Anderson
> County.[6]

He was further examined on the subject of Carroll

Hollow Road as follows:

> Q  And in fact, you have some relatives who
> live out there and you drove the road rather
> frequently, is that right?
>
> A  True.
>
> *    *    *
>
> Q  Okay.  Which relative of yours is it that
> lives out there?
>
> A  My grandmother.
>
> Q  And during the time before the guardrail
> went up, how often would you say you traveled
> that road on average?
>
> A  Oh, I don't know.  Twice a week.
>
> Q  Okay.  And you've lived in Anderson County
> all your life, is that right?
>
> A  Yes.

---

[5] Ellis explained a "state aid road" as follows:

> A state aid is where the county has certain mileage in
> the county and the state will come in and take a
> percentage of that mileage and make rural roads state
> aid roads.  And one thing it's got to do is it's got
> to meet a state aid road or a state road.  Then they
> will evaluate the road and do the paper work and take
> it to Nashville and then they will say it was a state
> aid road.  And then they will come and pave -- pay for
> paving that road.

[6] Even if the road was paved by the state, or the paving was paid for by
the state, this does not change the fact that Carroll Hollow Road is a county
road and hence the responsibility of the County.  *See* T.C.A. § 54-7-109
(1998).

Q Has your grandmother lived there your whole life?

A Yes.

Q So, you've traveled that road since you were a child?

A Yes.

Q Do you remember when the road was a gravel road?

A Vaguely.

Q Okay. Do you remember about when it was paved, the very first time?

A No.

Q Okay. As far as when it was a gravel road, the road has not been reconstructed since it was a gravel road, it simply had an asphalt pavement put on it, is that right?

A To my knowledge, that's right.

Q *I mean, nobody's regraded it, other than just grading the gravel, they haven't widened it, they haven't constructed shoulders, they haven't done anything to change it, except put asphalt on it?*

A *Right.*


(Emphasis added).


Ellis' testimony can be fairly read as indicating that Carroll Hollow Road had narrowed at the site of the accident going back to the time that it was originally laid out as a gravel road. The paving of the road, including the re-paving in 1982, "ha[dn't] widened it." This testimony tends to establish that Carroll Hollow Road as originally laid out, and as subsequently paved and re-paved prior to the accident, narrowed at this site from 18 feet to 16 feet, 4 inches. Because this dangerous condition, exacerbated by a lack of cautionary signage,

14

was created by the County, we hold that the County is charged with notice of it.  *See* **Glover,** 713 S.W.2d at 76.

The dissent points out, as did we, that the trial court did not predicate its finding of notice on a sub-finding that the County had constructed Carroll Hollow Road in a "defective, unsafe, or dangerous condition."  *See* T.C.A. § 29-20-203(a).  While this is true, it is not an impediment to our decision in this case.  We are "called upon to pass upon the correctness of the result reached in the [t]rial [c]ourt, not necessarily the reasoning employed to reach the result."  **Shelter Insurance Companies v. Hann**, 921 S.W.2d 194, 202 (Tenn.Ct.App. 1995) (citing **Kelly v. Kelly**, 679 S.W.2d 458 (Tenn.Ct.App. 1984)).  Under Rule 36, T.R.A.P., we are directed to "grant the relief on the law and facts to which the party is entitled or the proceeding otherwise requires."  The issue of notice to the County was obviously before the trial court.  If we find that the evidence preponderates in favor of a finding of notice, we are compelled to grant Cox the relief dictated by such a finding, regardless of whether we agree with the reasoning employed by the trial court in reaching its ultimate conclusion of notice.

The dissent seems to take the following path en route to finding that the evidence preponderates against a finding that the County knew or is chargeable with knowledge of the dangerous condition -- a dangerous condition that the dissent readily acknowledges.  First, the dissent suggests a theory of defense in opposition to a finding of notice, *i.e.*, that the "missing" 20 inches of pavement was once there, but is no longer there because

15

it broke off and fell down the hillside immediately adjacent to the road. It then searches the record for evidence to substantiate this theory of defense, but concedes that "[i]t is impossible to tell from Dr. Sissom's testimony, or anything else in this record before us, to what extent the pavement had crumbled, sunk, and deteriorated from erosion." Despite this lack of evidence, the dissent proceeds to find that the evidence preponderates against a finding that the County had the requisite notice. In effect, it takes an unknown -- how much, *if any*, of the "missing" 20 inches of pavement fell off -- and concludes that this unknown, this possibility as it were, is sufficient to offset the positive testimony of the former Anderson County Road Superintendent indicating that the road as originally laid out and as later paved was accomplished in such a way as to present the narrowing roadway that we all agree was a dangerous condition. In our judgment, the record supports a finding that the 20 inches of pavement was never there and that is why it is "missing." When there is a reasonable explanation for the narrowing, why should we engage in speculation to upset the trial court's judgment of liability under the GTLA?

There is no evidence in the record, direct or circumstantial, that the 20 inches of pavement width was once there, but, at some unknown time in the past, mysteriously disappeared, apparently down the side of the hill. There was no testimony at trial establishing that any portion of the pavement had ever broken off, *i.e.*, become disconnected from the roadway. Furthermore, no one testified that sections of asphalt pavement were found on or at the bottom of the hillside slope. The

16

photographs in the record reflect a relatively straight edge of pavement at the point where the vehicle's right front wheel left the paved area, rather than the jagged edge that might be expected from the loss of some length of 20 inches of pavement width.

There was no testimony from Dr. Sissom to the effect that any pavement had broken off. His testimony and the photographs in the record simply indicate that the erosion found by him had caused roughly parallel lines to appear in the edge of the asphalt pavement, a condition that, in turn, caused the edge of the pavement to *slope* to the right. It is obvious, from the context of his testimony, that this is the condition that he was describing when he said the pavement edge was "crumbling." To say that the pavement at its edge is cracked and "sloping" is not the same as saying that some part of it has broken off.

We find nothing to support the dissent's position with respect to notice; certainly, in our judgment, there is not enough to compel a finding of a preponderance.

IV.

In summary, the evidence does not preponderate against the trial court's basic finding, *i.e.*, that the road was in a "defective, unsafe, or dangerous condition." Moreover, the County is charged with notice because the road as originally constructed and as originally paved and re-paved over time, all prior to this accident, was in a dangerous condition. Thus, we

17

find and hold that the County is liable to Cox pursuant to the waiver of immunity found in T.C.A. § 29-20-203.[7]

V.

Next, the County argues that the trial court's apportionment of fault -- 70% to Howard and 30% to the County -- is erroneous. The County contends that such an apportionment is not supported by the evidence and that the trial court should have apportioned 100% of the fault to Howard.

A trial court has considerable latitude in allocating fault between or among culpable parties. *Wright v. City of Knoxville,* 898 S.W.2d 177, 181 (Tenn. 1995). We review a trial court's allocation of fault with a presumption of correctness, unless the preponderance of the evidence indicates that the trial court's allocation was "clearly erroneous." *Id.; see also* Rule 13(d), T.R.A.P.

Dr. Sissom's testimony establishes that there were two causes of this accident: the negligent driving of Howard and the unsafe condition of the road. Upon reviewing all of the evidence presented to the trial court, we cannot say that the preponderance of the evidence is such as to compel a finding by us that the trial court's allocation of 30% of the fault to the County is "clearly erroneous." *Wright*, 898 S.W.2d at 181.

---

[7]Because we have determined that immunity is removed under T.C.A. § 29-20-203, we do not deem it necessary to reach the parties' arguments concerning the applicability of T.C.A. § 29-20-205.

18

VI.

The County also appeals the trial court's award of discretionary costs to Cox. The County argues that an award of discretionary costs cannot be combined with an award of compensatory damages, if to do so causes the total award to the plaintiff to exceed the $130,000 limit set forth in T.C.A. § 29-20-404(a). That statutory provision prohibits a judgment against a governmental entity "in excess of the limits of liability set forth in [T.C.A.] § 29-20-403," *i.e.*, $130,000. We find and hold that by awarding Cox discretionary costs in addition to compensatory damages of $130,000, the trial court violated T.C.A. § 29-20-404(a). *See* **Erwin v. Rose,** 980 S.W.2d 203, 209-10 (Tenn.Ct.App. 1998). In **Erwin,** we reversed an award of post-judgment interest because when that award was added to the award of compensatory damages, the total judgment exceeded the $130,000 limit. We held in **Erwin** that the add-on for post-judgment interest impermissibly caused the judgment to exceed the statutory maximum of $130,000. *See **id.*** We find that the rationale of **Erwin** also applies to the facts of this case. Here, the award of discretionary costs, when added to the award of compensatory damages, creates a judgment in favor of Cox that exceeds the $130,000 limit. There is nothing in T.C.A. §§ 29-20-404(a) and 29-20-403 to indicate that an award of discretionary costs is an exception to the absolutely-stated monetary limitation of the GTLA. Whether an award of discretionary costs and/or post-judgment interest should be an award separate and apart from, and not subject to the $130,000 limitation of the GTLA, is a policy decision properly left to the judgment of the

19

General Assembly and not to the courts.  As we understand the relevant statutes, the legislature has decided that all awards to the plaintiff are subject to the one limitation of $130,000.

By awarding discretionary costs to Cox, the trial court held the County "liable in excess of the limits of liability set forth in [T.C.A.] § 29-20-403."  *See* **id** at 210 (quoting T.C.A. § 29-20-404(a)).  This it could not do.  We therefore reverse the award of discretionary costs in this case.

VII.

For the foregoing reasons, the judgment of the trial court awarding compensatory damages of $130,000 to Cox is affirmed. The judgment of the trial court awarding discretionary costs to Cox is reversed. Costs on appeal are taxed to the appellants. This case is remanded to the trial court for the entry of an appropriate order, consistent with this opinion, and for the enforcement of the judgment of $130,000 against the County and for collection of costs assessed below, all pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Houston M. Goddard, P.J.


(Separate Dissenting Opinion)
D. Michael Swiney, J.

21