IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
APRIL 21, 2004 Session

# VICKERY TRANSPORTATION, INC. and GRAMMER INDUSTRIES, INC. v. HEPACO, INC.

### Direct Appeal from the Chancery Court for Haywood County
### No. 12522     George R. Ellis, Chancellor

---

### No. W2003-01512-COA-R3-CV - October 4, 2004

---

This case arises out of an action seeking declaratory relief concerning the validity of an arbitration clause in a contract between the parties. Appellee filed a complaint in the Chancery Court at Haywood County for a determination of whether a contract, and, therefore, the arbitration clause in the contract, were invalid because the contract was one of adhesion or executed under duress. The trial court, upon Appellees' motion to stay arbitration, ordered that the arbitration proceedings should be stayed because there was no agreement to arbitrate. Appellant filed its appeal to this Court, and, for the following reasons, we reverse and remand this case for further proceedings consistent with this opinion.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Robert D. Flynn, Memphis, TN; Steele B. Windle, III, David Hill Bashford, Charlotte, NC, for Appellant

Carl K. Wyatt, Tim Edwards, Memphis, TN, for Appellees

## OPINION

## Facts and Procedural History

The facts of this case, gathered from the pleadings of the proceedings below,[1] are as follows. Vickery Transportation, Inc. ("Vickery") and Grammer Industries, Inc. ("Grammer" or collectively with Vickery, "Appellees") are two corporations organized under the laws of Ohio and Indiana, respectively. Appellees are in the business of transporting hazardous waste materials. Vickery was contacted about the transportation of hazardous waste materials from Helena, Arkansas, to Vickery, Ohio. On May 21, 2002, while transporting the waste materials on Interstate 40, the driver of the Vickery truck pulled over in Haywood County, Tennessee.

After pulling over, the driver of the truck noticed that the hazardous waste materials were beginning to react, causing the chemicals to spill out of the truck and on the ground. Vickery contacted a company named Spill Center ("Spill Center"), who maintains a list of companies that specialize in hazardous waste material clean-ups. HEPACO, Inc. ("HEPACO" or "Appellant") appeared on Spill Center's list and had an outdated service agreement with a schedule of charges on file with Spill Center. As a result, Spill Center contacted Appellant and requested its services to clean up the hazardous waste materials leaking from Vickery's truck.

At approximately 11:15 p.m., Mark Cooley ("Cooley"), a terminal manager for Vickery, contacted a representative at HEPACO, inquiring about the possibility of beginning a clean-up operation. Subsequently, on May 22, 2002, Cooley was advised by another HEPACO representative that, although a clean-up team was almost at the spill site, Cooley, or another Vickery representative, was required to execute HEPACO's Blanket Rapid Response Services Agreement ("Agreement") before HEPACO performed any work. On May 22, 2002, at 12:18 a.m., HEPACO faxed a copy of the Agreement to Cooley, who executed the Agreement. After Cooley signed the Agreement, HEPACO began work on the clean-up operation. During this delay in the HEPACO team's arrival, representatives with the fire department and the Tennessee Emergency Management Agency ("TEMA") insisted that someone immediately arrive on the site to assess and control the hazardous waste material spill. After HEPACO commenced the clean-up operation, Vickery believed that HEPACO's methodology was unsound and unsafe. Therefore, after HEPACO refused Vickery's request for an indemnity agreement, Vickery terminated the Agreement with HEPACO.

On September 19, 2002, Appellant filed a demand for arbitration, pursuant to the provisions of the Agreement signed by Cooley, against Vickery for breach of contract. On October 4, 2002, Appellees filed a complaint for declaratory judgment in the Haywood County Chancery Court, seeking a declaration that the Agreement is unenforceable as a contract of adhesion or a product of duress. Appellant filed a motion to stay litigation pending arbitration, and, in response, Appellees

---

[1] The trial court made scant findings of fact in its order on the motion to stay the arbitration proceedings. Additionally, after our review of the transcript of the hearing on the motion to stay arbitration, we note that the trial court made no findings of fact after the hearing on such motion.

filed a motion to stay arbitration and compel litigation. After a hearing on March 27, 2003, the trial court issued an order granting Appellees' motion to stay arbitration and compel litigation and denying Appellant's motion to stay litigation pending arbitration.[2] Appellant timely appealed to this Court and presents the following issues, as we perceive them,[3] for our review:

I. Whether the trial court erred when it determined that the Appellees were subjected to duress or economic duress such that the Agreement and the arbitration clause were invalid; and

II. Whether the trial court erred when it determined that the Agreement between Appellant and Appellees was a contract of adhesion and that the arbitration clause was unenforceable.

For the following reasons, we reverse the decision of the trial court and remand for any further proceedings.

## Standard of Review

Our review of a trial court's findings of fact in a civil action without a jury is *de novo* upon the record, affording the trial court a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). When a trial court makes no findings of fact, "there is nothing in [the] record upon which the presumption of correctness contained in Tenn. R. App. P. 13(d) can attach." *Kelly v. Kelly*, 679 S.W.2d 458, 460 (Tenn. Ct. App. 1984). Therefore, our review, for such scenario, is *de novo* upon the record with no presumption of correctness given to the trial court. *Id*. All questions of law are reviewed by this Court *de novo* with no presumption of correctness given to the trial court. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

## Duress

Appellant first argues that the trial court erred when it invalidated the arbitration clause on the basis that such clause was agreed to under duress or economic duress. Specifically, Appellant asserts that, because it was not responsible for the spilling of hazardous waste materials and Appellees had other companies available for a clean-up operation, Appellees should not be able to defend against enforcement of the Agreement on the basis of duress or economic duress.

---

[2] The trial court's order does not specify on which ground it decided that there was no agreement to arbitrate, and, therefore, we presume, from its statements at the hearing on the motions, that the trial court determined the arbitration clause did not apply because it was part of a contract of adhesion and the product of duress.

[3] Appellant raises the issue that the trial court erred when it considered the dated agreement on file with Spill Center. Given our disposition of the issues of whether the Agreement was a contract of adhesion or the product of duress, we need not address this issue. Additionally, Appellant raises the issue that the trial court erred when it determined the Agreement and arbitration clause were not executed at "arm's length." Again, because of our disposition of the other issues in this case, we need not address this question.

"'Duress' may be defined as an unlawful restraint, intimidation, or compulsion of another to such an extent and degree as to induce such other person to do or perform some act which he is not legally bound to do, contrary to his will and inclination." *Johnson v. Ford*, 245 S.W. 531, 538 (Tenn. 1922) (quoting *First Nat'l Bank v. Sargeant*, 91 N.W. 595, 601 (Neb. 1902)). Duress "'exists when one, by the unlawful act of another, is induced to make a contract or perform some other act under circumstances which deprives him of the exercise of free will.'" *Id.* (quoting *Sargeant*, 91 N.W. at 601 (quoting *Hackley v. Headley*, 8 N.W. 511, 512-13 (Mich. 1881))). This Court has adopted the following definition for "economic duress":

> [I]mposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress or extreme necessities or weaknesses of another; the theory under which relief is granted being that the party profiting thereby has received money, property or other advantage, which in equity and good conscience he ought not to be permitted to retain.

*Crocker v. Schneider*, 683 S.W.2d 335, 338-39 (Tenn. Ct. App. 1984) (quoting *Johnson*, 245 S.W. at 539 (quoting *Rees v. Schmits*, 164 Ill. App. 250, 258 (Ill. App. Ct. 1911))); *Moman v. Walden*, 719 S.W.2d 531, 534 (Tenn. Ct. App. 1986).

Though this case concerned the clean-up of hazardous waste materials, after our review of the record, we cannot say that Appellees proved the existence of duress or economic duress. In the instant case, Appellees argue that Appellant subjected Appellees to duress when Appellant waited until right before beginning the clean-up operation to notify Appellees that the Agreement would need to be executed before Appellant began work. This action, coupled with the exigent circumstances intrinsic to a hazardous waste material spill, Appellees argue, resulted in the Agreement being a product of duress or economic duress. We disagree. Appellant's insisting on the execution of a contract for services before beginning an operation is not unlawful, wrongful, or coercive. *See Flynt Eng'g Co. v. Cox*, 99 S.W.3d 99 (Tenn. Ct. App. 2002). From the record, it appears that such operation was rather involved and required a great deal of time and resources. Appellees have mistaken prudence for coercion. Additionally, we note that Appellant was not responsible for the spill of hazardous waste materials. *See* 28 Samuel Williston, *Treatise on the Law of Contracts* § 71:23, at 522-23 (Richard A. Lord ed., 4th ed. 2003) (stating that "[i]t is not duress or undue influence when a party is constrained to enter into a transaction by mere vexation and annoyance or by the pressure or force of circumstances for which the other party is not responsible"). We believe the insistence on executing a contract for services alone is not taking undue advantage of any extreme necessity or weakness of Appellees' position. *See Flynt Eng'g Co. v. Cox*, 99 S.W.3d 99 (Tenn. Ct. App. 2002). Because we hold that Appellees failed to prove the existence of duress or economic duress, we must reverse the decision of the trial court, staying arbitration and compelling litigation.

## Contract of Adhesion

Next, Appellant argues that the trial court erred when it determined that the arbitration clause was unenforceable for being a contract of adhesion. For this analysis, we must determine (1) whether the Agreement is a contract of adhesion, and (2) if so, whether the Agreement contains unconscionable or oppressive terms to render the arbitration clause unenforceable. *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996). In *Buraczynski v. Eyring*, the Tennessee Supreme Court adopted the following definition for a contract of adhesion:

> [A] standardized contract form offered to consumers of goods and services on essentially a "take it or leave it" basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract.

*Id.* (quoting Black's Law Dictionary 40 (6th ed. 1990); citing *Broemmer v. Abortion Servs. of Phoenix, Ltd.*, 840 P.2d 1013 (Ariz. 1992)).

After our review of the record, we cannot say that the contract at issue was a contract of adhesion. Though the evidence in the record shows that Appellant would not commence work until the contract was signed (i.e. on a "take it or leave it" basis) and counsel for Appellant admitted that the contract was a standard form contract, the Agreement was not a contract of adhesion. In his affidavit, Cooley states that attempts were made to acquire the services of a clean up team at Du Pont. Additionally, Cooley and Thomas Moses ("Moses"), president of Spill Center, stated that Spill Center maintained, in Moses' words, a "computer data base with a number of contractors, who specialize in providing services to transportation companies in the event of a hazardous materials release." (TR vol. 1, p. 60, 72). Though Appellees argue that the conditions were such that action was required immediately and that there was no time to wait for another clean-up team to arrive, the only evidence of such conditions are the conclusory statements by Cooley and Moses, who were not present at the accident scene. After reviewing the record, we cannot say that the Appellees sufficiently proved that the Agreement was a contract of adhesion because there is insufficient evidence that Appellees had no alternative to executing the Agreement. Therefore, we reverse the order of the trial court on this basis.[4]

---

[4] Because we find that the Agreement was not a contract of adhesion, we need not address whether the arbitration clause was an unenforceable provision.

## Conclusion

For the foregoing reasons, we reverse the order of the trial court, staying arbitration and compelling litigation. We remand this case for any further proceedings consistent with this opinion. Costs of this appeal are taxed to Appellees, Vickery Transportation, Inc., and Grammer Industries, Inc., for which execution may issue if necessary.

_____

ALAN E. HIGHERS, JUDGE