# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

April 15, 1998

Cecil W. Crowson
Appellate Court Clerk

JOE ERWIN and SUSAN ERWIN,                  )
as surviving parents and next of kin        )
of BETHANY SUZANNE ERWIN,                   )
                                            )
      Plaintiffs/Appellants,          )    Appeal No.
                                            )    01-A-01-9706-CV-00248
VS.                                         )
                                            )    Maury Circuit
JAMES M. ROSE, WADE MATHENY,                )    No. 5932
in his capacity as Sheriff of Maury         )
County, Tennessee, MAURY COUNTY             )
SHERIFF'S DEPARTMENT, MAURY                  )
COUNTY, TENNESSEE, and                      )
TRACY JOE LOVELL,                           )
                                            )
      Defendants/Appellees.           )

APPEALED FROM THE CIRCUIT COURT OF MAURY COUNTY
AT COLUMBIA, TENNESSEE

THE HONORABLE WILLIAM B. CAIN, JUDGE

PAUL A. BATES
CHRISTOPHER V. SOCKWELL
P. O. Box 357
Lawrenceburg, Tennessee 38464
    Attorneys for Plaintiffs/Appellants

ALAN M. SOWELL
150 Second Avenue North, Suite 201
Nashville, Tennessee 37201-1931
    Attorney for Defendants/Appellees James M. Rose
    and Maury County, Tennessee

T. EDWARD LAWWELL
610 North Garden Street
P. O. Box 1017
Columbia, Tennessee 38402
    Attorney for Appellee Tennessee Farmers Mutual Insurance Company

AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
KOCH, J.

# O P I N I O N

This case involves questions of the liability of a municipality and its agents under the Governmental Tort Liability Act. It also involves a question of the liability of a plaintiff's underinsured motorist carrier when the plaintiff has recovered from the tort-feasor more than the policy limits. We affirm the lower court's order on the liability of the municipality and its agents and the order dismissing the claim against the underinsured motorist carrier. We reverse the order awarding prejudgment interest because it raises the recovery from the municipality over the allowable limit.

## I.

On February 12, 1993, Maury County Deputy Sheriff Mike Rose observed a white Mustang pass another car in a no-passing zone on Campbellsville Pike. Deputy Rose pursued the Mustang in a southerly direction on the narrow, crooked, two-lane road. The driver, later identified as Tracy Joe Lovell, did not heed Deputy Rose's blue lights and siren, but sped away. Deputy Rose followed in hot pursuit.

Deputy Rose was driving a 1987 Dodge with more than 100,000 miles on it. The car frame had been welded together by a jail trustee and the car's shocks and brakes were not in good condition. About three miles from where the chase began Deputy Rose lost control of the car coming out of a curve and crashed head-on into a car being driven by Bethany Suzanne Erwin, a student at Middle Tennessee State University. Ms. Erwin was pronounced dead shortly thereafter.

Ms. Erwin's parents filed a wrongful death action against Mr. Lovell, Deputy Rose, the Maury County Sheriff, and Maury County. The plaintiffs also served

a copy of the complaint on their underinsured motorist carrier which had issued to them a policy with $100,000 in coverage for harm caused by an underinsured motorist. In an amended complaint, the plaintiffs added a claim against Mr. Rose, the sheriff, and Maury County for violating the decedent's civil rights under 42 U.S.C. § 1983.

Prior to trial, the lower court granted summary judgment to the sheriff and partial summary judgment to the county, limiting the county's liability to $130,000 or the amount of the sheriff's bond. The court's action in dismissing the sheriff is not challenged on appeal.

The lower court bifurcated the trial, trying the case against Deputy Rose and the county first. The court apportioned fifty percent of the fault to Deputy Rose and fifty percent to Tracy Joe Lovell. The court found the damages to be in excess of $1,000,000 but limited the county's liability to $130,000 under Tenn. Code Ann. § 29-20-403(2)(A). Pursuant to Tenn. Code Ann. § 29-20-310, the court dismissed the claim against Deputy Rose altogether.

The court then tried the case against Mr. Lovell to a jury. The jury returned a verdict for $1,000,000, finding Mr. Lovell eighty-four percent at fault and Deputy Rose sixteen percent at fault.

The underinsured motorist carrier moved for summary judgment on the Erwins' claim under the policy. Finding that Mr. Lovell had a $25,000 liability policy and that the county had paid the $130,000 judgment against it, the trial judge dismissed the claim against the underinsured carrier.

**II.**

The appellants argue that the acts of Deputy Rose were willful, thus rendering him personally liable for the decedent's death and rendering the county liable for an amount in excess of $130,000. This argument is based on an interpretation of the rather confusing language in Tenn. Code Ann. § 29-20-310(c):

> No claim may be brought against an employee or judgment entered against an employee for injury proximately caused by an act or omission of the employee within the scope of the employee's employment for which the governmental entity is immune in any amount in excess of the amounts established for governmental entities in § 29-20-403 unless the act or omission was willful, malicious, criminal or performed for personal financial gain, . . . .

We are of the opinion, however, that this section has nothing to do with the county's liability. It provides a limited immunity for the county's employees. The county's immunity has been abolished in other sections of the Act, *see* Tenn. Code Ann. § 29-20-202, 203, 204 and 205, but the county's liability is limited by Tenn. Code Ann. § 29-20-311:

> No judgment or award rendered against a governmental entity may exceed the minimum amounts of insurance coverage for death, bodily injury and property damage liability specified in § 29-20-403, unless such governmental entity has secured insurance coverage in excess of said minimum requirements, in which event the judgment or award may not exceed the applicable limits provided in the insurance policy.

The minimum limits of liability are now set by Tenn. Code Ann. § 29-20-403(B)(2)(A) at $130,000 for an injury to or death of a single person. We find nothing in the Governmental Tort Liability Act that would increase that liability unless the county obtains liability insurance in a greater amount. *Id.*

With respect to the employee, Tenn. Code Ann. § 29-20-310(c) should be read in conjunction with Tenn. Code Ann. § 29-20-310(b):

> No claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter unless the claim is one for medical malpractice brought against a health care practitioner.

Reading the two sections together, it is obvious that the legislature wished to limit the exposure of municipal employees while it selectively removed the immunity of the municipality itself. It did so in two ways: (1) by giving the employee absolute immunity in cases where the municipality's immunity was removed (subsection (b)), and (2) by limiting the employee's liability in cases in which the municipality was yet immune to the limits in Tenn. Code Ann. § 29-20-403 -- unless the employee's acts were willful, malicious, criminal, or performed for personal financial gain (subsection (c)).

The county's immunity for injuries caused by the negligent operation of an automobile has been removed by Tenn. Code Ann. § 29-20-202. Thus, if we are correct in our interpretation of Tenn. Code Ann. § 29-20-310(b), Deputy Rose has an absolute immunity for the acts that led to the county's liability. The trial judge acted correctly in dismissing Deputy Rose, whether his actions under the circumstances could be labeled willful or not.

### III.

The appellants also assert that the trial court erred in dismissing the claims based on 42 U.S.C. § 1983. The federal act states:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law, suit in equity, or other proper proceeding for redress.

As the trial judge noted, "There is no convenient place this side of the Magna Carta to start this analysis." Therefore, the only way to proceed is to plunge in and note at the outset that the liability of the deputy rests on significantly different factors than does the liability of the county. The county's liability cannot be based on respondeat superior, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978), but the

county may be liable, based on its own conduct, even if Deputy Rose did not commit a constitutional violation in his individual capacity. *Williams v. City and County of Denver*, 99 F.3d 1009 (10th Cir. 1996).

### a. Deputy Rose

In order to establish a claim against an individual under § 1983, the plaintiff must show more than a mere act of negligence. *Daniels v. Williams*, 474 U.S. 327, 330 (1986). In *Nishiyama v. Dickson Co.*, 814 F.2d 277 (6th Cir. 1987), the Sixth Circuit Court of Appeals held that something on the order of gross negligence or outrageous conduct was necessary to give rise to an action under § 1983 (something showing a deliberate indifference to the public safety). Other circuits have also adopted something less than the "conscience-shocking" standard initially set by the United States Supreme Court in *Rochin v. California*, 342 U.S. 165 (1952). *See Medina v. City and County of Denver*, 960 F.2d 1493 (10th Cir. 1992); *Lewis v. Sacramento County*, 98 F.3d 434 (9th Cir. 1996). The Supreme Court, however, reiterated its "conscience-shocking" standard in *Collins v. City of Harker Heights*, 503 U.S. 115 (1992), and the Sixth Circuit had to concede that *Nishiyama* probably did not survive *Harker Heights. See Lewellen v. Metropolitan Government of Nashville*, 34 F.3d 345 (6th Cir. 1994). What is required is a deliberate act, an act that is "arbitrary in the constitutional sense." *Id.* at 351.

Even under its lesser *Nishiyama* standard the Sixth Circuit held that engaging in a high speed chase that results in a tragic death did not result in liability under § 1983. *See Jones v. Sherrill*, 827 F.2d 1102 (6th Circ. 1987). The only difference between *Jones v. Sherrill* and this case is the fact that Deputy Rose's car had some mechanical problems that were known to him and that affected the car's safety. We are persuaded, however, that those facts do not make this a case involving an arbitrary, deliberate deprivation of constitutional rights. The trial judge found that the acts of Deputy Rose were negligent but not intentional. We agree.

## b. The County

As we have indicated, the county's liability in a § 1983 claim is not based on respondeat superior. To be liable, the county itself must be found to have engaged in the same conduct that would give rise to liability on the part of an individual. *Temkin v. Frederick County Commissioners*, 945 F.2d 716 (1991).

In this case, the appellants assert that the county's failure to train Deputy Rose amounts to a deliberate indifference to the rights of the public. *See Sanford v. Metropolitan Government*, No. 01A01-9606-CV-00251, (filed in Nashville, Jan. 24, 1997, *perm. to appeal granted Oct. 6, 1997, settled while on appeal*). We do not agree. Even if *Sanford's* "deliberate indifference" standard is correct, the record shows that Deputy Rose was trained at the Tennessee Law Enforcement Training Academy and that he received the same amount of training as any other police officer in the state. He had been furnished a copy of the pursuit policy developed and used by the Metropolitan Government of Nashville.

To establish their inadequate training claim, the appellants offered the testimony of an expert who looked at Deputy Rose's training and classified it as broad and vague, leaving too much to the discretion or judgment of the individual officer. He testified that the "judgmental" policy adopted by Maury County was not a bad policy but required much more training to teach an officer how to react to a pursuit situation.

While a finding of negligence might be based on the expert's testimony, we cannot accept his conclusion that the Maury County training regimen amounted to a deliberate indifference to the rights of the public. Deputy Rose was trained at the academy that trains most of the officers in Tennessee. His training might have fallen short of the ideal, but the county did not deliberately and knowingly put an untrained officer on the streets.

The appellants also argue that the trial judge erred in dismissing the claim against Tennessee Farmers Mutual Insurance Co. under its underinsured motorist coverage. While acknowledging that the claim would be barred by the prior decisions of our Supreme Court and this court, the appellants cite an unpublished opinion of the Eastern Section of this court holding that after *McIntyre v. Balentine*, the payments received from other tort-feasors cannot be credited to the insurance company. *See Cox v. Neway-Love Distributors, Inc.*, No. 03A01-9510-CV-00335 (filed in Knoxville, Jan. 11, 1996, *perm. to appeal granted June 3, 1996, settled while on appeal*). The Eastern Section reasoned that since defendants are no longer jointly liable, a payment by one defendant does not apply to the liability of another. Therefore, a payment by one defendant's insurance company would not benefit the insurance carrier having the uninsured-underinsured coverage.

While *McIntyre v. Balentine* did abolish joint liability, we do not think it changed the statutes that govern uninsured-underinsured motorist insurance or the private contract policy provisions that have been consistently construed to give the insurance company the credit it seeks in this case.

Starting with *Terry v. Aetna Casualty and Surety Co.*, 510 S.W.2d 509 (Tenn. 1974), our Supreme Court interpreted the uninsured motorist statutes as requiring only limited coverage up to the statutory required minimum for financial responsibility. In *Terry* the Court said:

> It results, and we so hold, by enactment of T.C.A. § 56-11-1152 *(now 56-7-1205)* as a section of our uninsured motorist statute, it is the legislative purpose to provide an insured motorist a right of recovery under the uninsured motorist provision of his policy only to the statutory requirement minimum (T.C.A. § 56-7-1148) and provisions in such policies, approved by the Commissioner of Insurance, operating to reduce such coverage where such coverage or benefits are available to the insured arising from accident causing the loss, are

valid if such provisions do not operate to deny payments to the insured of less than the statutory minimum.

510 S.W.2d at 513.

Furthermore, an uninsured motor vehicle is defined in Tenn. Code Ann. § 56-7-1202(a) as:

> For the purposes of this coverage, 'uninsured motorist vehicle' means a motor vehicle whose ownership, maintenance, or use has resulted in the bodily injury, death or damage to property of an insured, and for which the sum of the limits of liability available to the insured under all valid and collectible insurance policies, bonds, and securities applicable to the bodily injury, death, or damage to property is less than the applicable limits of uninsured motorist coverage provided to the insured under the policy against which the claim is made.

Tennessee Farmers' policy specifically provides:

> Our limit of liability for this Uninsured Motorist Coverage shall be reduced by the sum of the limits payable under all liability and/or primary uninsured motorist insurance policies, bonds and securities applicable to the bodily injury or the death of the covered person.
>
> . . .
>
> Damages payable under this coverage to or for a covered person shall be reduced by:
>
> 1.     the amount paid under the Liability and Medical payments Coverages of this policy or any other automobile insurance policy;
> 2.     the amount paid or payable under any workers' compensation law, disability benefit law, or similar law;
> 3.     a payment made by or on behalf of the owner or operator of the uninsured motor vehicle or by or on behalf of the person or entity who may be legally liable.
>
> . . .
>
> We shall not be obligated to make any payment under this Uninsured Motorist Coverage until after the limits of liability under all bodily injury, liability bonds or insurance policies applicable at the time of the accident have been exhausted by payments of judgments or settlements.

Perhaps the strongest statement of the effect of these statutory and policy provisions can be found in *Thompson v. Parker,* 606 S.W.2d 538 (Tenn. App.

- 9 -

1980).    In applying the Supreme Court's decision in *State Automobile Mutual Insurance Co. v. Cummings*, 519 S. W.2d 773 (Tenn. 1975) the Court said:

> "We understand *Cummings* to mean that the uninsured motorist insurance statutes of this state provide less than broad coverage since the legislature had permitted uninsured motorist policies to be written so as to 'include such terms, exclusions, limitations, conditions, and offsets, which are designed to avoid duplication of insurance and other benefits." (T.C.A. § 56-7-1205). We further understand *Cummings* to mean that the legal liability of more than one tort-feasor or the involvement of multiple vehicles in one tortious event or accident is immaterial as to the interpretation of exclusions, permitted by T.C.A. § 56-7-1205, which allow an insuror by contract to reduce its liability by any sums paid to its insured by other parties jointly or severally liable to the insured.

> "In addition we observe uninsured motorist insurance does not actually insure the uninsured motorist. It insures the insured and assures him to some recovery when the other parties do not have liability insurance. The statute, T.CA. § 56-7-1205, permits the insuror, by contract, to offset its liability to the insured by whatever amount of money from whatever source the insured may receive it, if the money from the outside source would be a duplication of the amount agreed to be paid by the insuror."

606 S.W.2d at 540.

We are persuaded that *McIntyre v. Balentine* did not affect the right of the insurance company to reduce its coverage by the benefits the insured receives from whatever source.

## V.

The appellants also argue that liability against the county could have been imposed under Tenn. Code Ann. § 8-8-301, et seq.  In Tenn. Code Ann. § 8-8-301, the sheriff is given an absolute immunity for the acts of his deputies, "whether the deputy is acting by virtue of office, under color of office or otherwise."  But the following section provides:

> Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit

- 10 -

against the county in which the sheriff serves; provided,
that the deputy is, at the time of such occurrence, acting
by virtue of or under color of the office.

Tenn. Code Ann. § 8-8-302.

In *Jenkins v. Loudon County*, 736 S.W.2d 603 (Tenn. 1987) the Supreme Court had to parse out what part, if any, of Tenn. Code Ann. § 8-8-302 survived the adoption of the Governmental Tort Liability Act in 1973 (GTLA) and its subsequent amendments. The Court concluded that in appropriate cases a county could still be sued under Tenn. Code Ann. § 8-8-302 for "the non-negligent conduct of deputies." 736 S.W.2d at 609. The GTLA governed other cases.

We are as perplexed as the trial judge was as to the precise meaning of non-negligent conduct. Perhaps we would all agree that intentional conduct is non-negligent, but the GTLA retains the county's immunity for many intentional torts, for instance, "malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of rights or privacy, or civil rights." Tenn. Code Ann. § 29-20-305(2). See also subsections (5) and (6).

If we ignore the immunities retained in the GTLA for certain intentional conduct, and say that the county may be sued therefor, we are still of the opinion that the conduct of Deputy Rose does not rise to that intentional level.

**VI.**

The county has raised the point that the trial judge erred in entering a judgment against the county in excess of the $130,000 limit set in Tenn. Code Ann. § 29-20-404(a). The excess resulted from the accrual of post-judgment interest from the date the original judgment was entered, April 17, 1996, until it was paid on May 28, 1996.

In *Lucius v. City of Memphis*, 925 S.W.2d 522 (Tenn. 1996), the Supreme Court held that the post-judgment interest statute, Tenn. Code Ann. § 47-14-121, applied to judgments against governmental entities brought under the GTLA. In that case, however, the judgments were for $9,100 and $35,000 respectively, and the addition of interest did not increase the judgment over the limit set in Tenn. Code Ann. § 29-20-404(a).

The county argues that the legislature, when it said in Tenn. Code Ann. § 29-20-404(a) "a governmental entity or the insurer of such governmental entity shall not be held liable for an judgment in excess of the limits of liability set forth in § 29-20-403, unless the governmental entity has expressly waived such limits," meant that the $130,000 limit was the most the county would have to pay.

The appellants, on the other hand, argue that *Lucius* controls or that the county is not paying more than a $130,000 judgment; it is paying one judgment for $130,000 and another for the post-judgment interest.

We are of the opinion that the Supreme Court's opinion in *Lucius* does not address this issue. It does hold that judgments against governmental entities carry post-judgment interest, but it did not involve a judgment that was already at the maximum allowed by law. We are also of the opinion that the appellants cannot escape the prohibition of § 29-20-404(a) by collecting a judgment for $130,000 and another for post-judgment interest based on that same judgment. In that case, the county would be "held liable for a judgment in excess of the limits of liability set forth in § 29-20-403." Therefore, we reverse the award of post-judgment interest in this case.

**VII.**

The county also asserts that it should have been awarded discretionary costs under Rule 54.04(2), Tenn. R. Civ. Proc. That rule allows the court to award certain costs other than those prepared by the clerk, Rule 54.04(1), "only in the court's discretion." We cannot say that the court abused his discretion in this case. This issue is, therefore, without merit.

The judgment of the court below awarding post-judgment interest on the judgment against the county is reversed. In all other respects it is affirmed and the cause is remanded to the Circuit Court of Maury County for any further necessary proceedings. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION

_____
WILLIAM C. KOCH, JR., JUDGE