**Mary MATTHEWS, Plaintiffs,**

v.

**PICKETT COUNTY, TN,
et al., Defendant.**

No. 2:94–0089.

United States District Court,
M.D. Tennessee,
Nashville Division.

Nov. 17, 2000.

Order granting in part motion to amend or alter, Oct. 19, 2000.

Order denying amendment,
Nov. 17, 2000.

Joseph Howell Johnston, Nashville, TN, Max Edward Mendelsohn, Nashville, TN, for Mary Matthews.

Thomas Marshall Donnell, Jr., Stewart, Estes & Donnell, Nashville, TN, Alan T. Fister, Brentwood, TN, for Pickett County TN, Larry Peek, Dana Dowdy, Pickett County Sheriff's Department.

## MEMORANDUM

HAYNES, District Judge.

Plaintiff, Mary Matthews, filed this action under 42 U.S.C. § 1983 against defendants Pickett County, Tennessee, Larry Peek and Dana Dowdy, individually and as employees of the Pickett County Sheriff's Department. Matthews, a citizen of Alabama, also invoked the Court's diversity jurisdiction under 28 U.S.C. § 1332 for her state law claims under the Tennessee Governmental Tort Liability Act ("TGTLA"),

Tenn.Code Ann. § 29–20–101 *et. seq.* and Tenn.Code Ann. § 8–8–302 for her claims against defendants Peek and Dowdy. Matthews' claims arise out of a divorce proceeding against her late husband, Bill Winningham. Based upon her husband's prior history of physical and sexual assault, the Circuit Court for Pickett County issued a Protective Order on October 15, 1993 to bar her husband from contacting her and directed all law enforcement officers to arrest her husband in the event that the husband violated the Court's Order. Matthews alleges that on November 18, 1993, she reported to the Pickett County Sheriff's Office that her husband called and threatened to kill her. The defendants Peek and Dowdy, deputy sheriffs for Pickett County, arrived at the Matthews' residence and requested Winningham to leave, but did not arrest Winningham despite the State Court's Order of Protection. Winningham left the premises. The deputies also advised Matthews to leave and escorted her to a location outside Pickett County. Later, Matthews' husband returned to her home to set a fire destroying its contents and her pets, as well as riddling her automobile with bullets.

Matthews' claims are that the defendants Peek and Dowdy knew that her husband had violated the State Court's Protective Order and that her husband posed an imminent threat to her person and property, but failed to arrest her husband thereby breaching their special duty to protect her under the State Court Order. Matthews, later withdrew her § 1983 claims (Docket Entry No. 22, Amended Complaint).

As to Matthews' state law claims, in earlier proceedings, this Court concluded that the defendants' conduct was within the scope of the TGTLA in Tenn.Code Ann. § 29–28–201, but concluded that the Tennessee public duty doctrine rendered the defendants immune from liability.

The Court ruled that Tennessee law did not recognize any special duty to protect the plaintiff (Docket Entry Nos. 50 and 51).

Matthews appealed to the Sixth Circuit that certified to the Tennessee Supreme Court for a ruling, the questions of whether Tennessee law recognizes a special duty to protect in light of the State Court's Order of Protection, and if so, whether that special duty extended to the protection of property (Docket Entry No. 64). The Tennessee Supreme Court concluded that the special duty exception did exist under Tennessee law and could be applied to the facts of this case. *Matthews v. Pickett County,* 996 S.W.2d 162, 165 (Tenn. 1999). . The Tennessee Supreme Court concluded that the defendants may be liable under the TGTLA, including liability for property damages, for any breach of that duty to Matthews. *Id.* The Sixth Circuit then affirmed in part, but reversed and remanded this action for further proceedings consistent with the Tennessee Supreme Court's ruling. This action was set for a bench trial that was held on June 26, 2000.

Pending before the Court are defendants' motion for judgment on the pleadings and motion *in limine* (Docket Entry No. 81) and plaintiff's motion to certify questions of state law to the Tennessee Supreme Court (Docket Entry No. 85).

The defendants' motion for judgment on the pleadings argues that any recovery for loss of property is limited to $50,000 and that the individual defendants are absolutely immune under Tenn.Code Ann. § 29–20–310(b). This motion also asks to preclude any evidence that the individual defendants are liable because they are absolutely immune. In subsequent submissions, the defendants argue that Matthews cannot recover damages for any emotional distress associated with her loss of proper-

ty and sound public policy reasons preclude any award of damages for emotional distress (Docket Entry No. 102).

In her motion to certify, Matthews argues that the Tennessee Supreme Court should be asked to decide whether damages for emotional distress can be recovered for the defendants' breaches of their duties of special protection and whether the individual defendants are entitled to immunity for claims that TGTLA bars against the county.

As to these pending motions, the Court concludes that under Tennessee law, the individual defendants are not absolutely immune and Tennessee law allows recovery of damages from them for the emotional distress suffered by Matthews. The liability of the individual defendants cannot be decided upon the pleadings. The facts of their conduct must be considered to determine their liability to Matthews. Thus, the defendants' motion for judgment on the pleadings and motion in limine should be denied. Further, plaintiff's motion to certify questions to the Tennessee Supreme Court is also denied as the applicable Tennessee precedents, including those of the Tennessee Supreme Court, are sufficiently clear to allow this Court to resolve the state law issues in this action.

As to the merits of the parties' claims and defenses, the reasons set forth below, the Court concludes that the prior findings of fact by this Court, coupled with the prior ruling of the Tennessee Supreme Court, establish that the defendants Peek and Dowdy breached their special duty of protection to Matthews. As a result of their breaches of this special duty, the Court concludes that Matthews is entitled to damages against the defendant Pickett County for the loss of her property. The Court concludes, however, that TGTLA

bars any recovery by Matthews against the County for her emotional distress. Yet, Tennessee law provides that in such an instance, Matthews can recover damages for her emotional distress from the defendants Peek and Dowdy, subject to the monetary limits in Tenn.Code Ann. § 29–20–403. The Court concludes that based on the proof, Matthews is entitled to $30,000 in damages for her property loss and $130,000 for the emotional distress she has had to endure for years due to the defendants Peek's and Dowdy's breaches of their duty of special protection of Matthews under the State Court Order of Protection.

## A. FINDINGS OF FACT [1]

In late 1993, Matthews was married to Bill Winningham and lived in Pickett County, Tennessee. In September, 1993, Matthews filed for divorce. On October 14, 1993, Mr. Winningham broke into Mary Matthew's house, hid behind the door, violently attacked her, beat her and raped her. The Pickett County Sheriff's Office was aware of this incident.

As a result of Winningham's conduct, the Honorable John A. Turnbull of the Pickett County Circuit Court entered an *ex parte* Order of Protection on October 15, 1993. Judge Turnbull directed service of his Order to the Sheriff to be "served immediately" (Defendants' Exhibit No. 1 at the November 8, 1995 trial). The same day, Delbert Connor, a Pickett County deputy sheriff, personally served a copy of the *ex parte* Order of protection on Winningham. The Pickett County Sheriff's Office also received a copy of the *ex parte* Order.

---

**1.** Pursuant to Fed.R.Civ.P. 52(a), these findings of fact are based upon the Court's earlier findings of fact (Docket Entry No. 51), as well as the evidence at the prior trial and the trial after remand.

After a hearing on October 25, 1993, Judge Turnbull made that Order permanent and further ordered as follows:

### ORDER OF PROTECTION

This cause came on to be heard on the 25th day of October, 1993, upon notice duly served on the respondent and upon statements made in open court. From the entire record herein, the Court finds that the petitioner has proved the allegations of abuse by a preponderance of the evidence.

IT IS, THEREFORE, ORDERED that the respondent is enjoined from coming about petitioner for any purpose and specifically from abusing, threatening to abuse petitioner, or committing any acts of violence upon petitioner upon penalty of contempt.

IT IS FURTHER ORDERED AS FOLLOWS:

1. That, if respondent violates this Order, the respondent may be held in contempt of court and punished by incarceration in the PICKETT COUNTY JAIL.

2. That, pursuant to T.C.A. Section 36–3–609, a copy of this Order be issued to all local law enforcement agencies in PICKETT COUNTY.

3. That, pursuant to T.C.A. Section 36–3–611, respondent shall be arrested by a law enforcement officer without a warrant if that officer has reasonable cause to believe that respondent has violated or is violating this Order.

. . . . .

IT IS FURTHER ORDERED that this Order shall remain in effect for a period of one year, and petitioner, upon notice to respondent, may request a continuation of this Order.

ENTERED this 25th day of October, 1993.

(Defendants' Exhibit 2).

Tim Martin, Picket County Circuit Court Clerk, testified that it was his practice to give a copy of such orders to the Pickett County Sheriff's Office upon receipt and that he gave a copy of that Order to the dispatcher in the Sheriff's Office. There was no evidence in his file, however, that the October 25, 1993 order was given to the dispatcher in the Sheriff's Office.

On November 18, 1993, at approximately 9:30 p.m., Bill Winningham telephoned Matthews at her house and told her he wanted to come over and retrieve some plywood. Matthews told him to send someone to get it. Matthews had bought a car that day and observed Winningham driving by her home. At some point, Winningham telephoned her and threatened to kill her. Matthews called the Sheriff's Department and told the dispatcher about the call and the dispatcher responded that he would send someone out "as soon as we can."

At approximately 10:00 p.m., Matthews called the dispatcher again to report that Winningham was at her house and was parked on the nearby gravel road. The Sheriff's dispatcher again told Matthews that he would "get someone out there." Shortly thereafter, Matthews watched from her window as Winningham tried to break into her house. Matthews called the dispatcher a third time at approximately 10:30 p.m., and told him that Winningham was now trying to break into the house. The dispatcher's response was the same. At approximately 10:30 p.m., the telephone at Matthews' house went dead. Matthews then heard and saw firecrackers exploding under the propane gas tank that was on the side of her home.

At approximately 11:50 p.m., Deputy Sheriffs Peek and Dowdy arrived at Matthews' home. These deputies first spoke to Winningham who was standing beside his truck parked on the gravel road approximately 100 yards from Matthews' home. Neither deputy frisked Winning-

ham, although Peek testified he might have patted Winningham's front pockets. Dowdy observed a pair of pliers in Winningham's back pocket. Neither deputy searched Winningham's vehicle. The deputy simply told Winningham to leave Matthews alone and Winningham drove off in his truck.

After turning Winningham loose, the deputies proceeded to Matthews' house to talk with her. Matthews again described the events that had occurred. Dowdy verified that the telephone lines to Matthews' house had been cut. Peek suggested that Matthews swear out a warrant against Winningham. Peek, Dowdy and Matthews then went to the courthouse.

Peek called Tim Martin, the Clerk of the Court and Judicial Commissioner for the County, and told Martin that Mary Matthews wanted a warrant on Bill Winningham because he had violated the Protective Order. Martin verified that there was an Order of Protection on file and told Peek that Winningham could be arrested without a warrant.[2]

The Order of Protection for Matthews echoed the statutory authorization to arrest Winningham without a warrant, if he violated the protective order. Despite this clear authority for a warrantless arrest, Peek testified that he would not have arrested Mr. Winningham without a warrant. Dowdy testified that he did not have probable cause to arrest Winningham unless the acts of violence were committed in his presence or if Matthews swore out a warrant for his arrest. Dowdy testified, "There wasn't really a whole lot we could do, we didn't see him do any of it, we didn't have no warrant." Obviously, the deputies misunderstood the scope of their authority regarding the Orders of Protection.

After Martin told Peek an Order of Protection was in place and an additional warrant for Winningham's arrest was unnecessary, the deputies dropped the matter. They did not tell Matthews to apply for another warrant nor did they make any attempt to arrest Winningham.

The deputies asked Matthews if there were anywhere that she could go to feel safe. Matthews replied that if they were not going to arrest Winningham, she was not returning to her house, because the telephone lines had been cut and there would be no way she could call for help. Matthews decided to spend the night at a friend's house in Overton County. The deputies escorted her back to her home to gather some belongings and then would escort her to the Pickett–Overton County line.

On returning to Matthews' home, the deputies discovered that someone had riddled Matthews' car with bullets during their absence. Peek testified that he left Roger Mullins, his first cousin, at Matthews' house while Peek and Dowdy followed Matthews out of the county. Peek left Mullins at the house as an observer, "in case something happened while we was gone again." Peek and Dowdy returned to Matthews' house approximately 30 minutes later to pick up Mullins. On their return to Matthews' house, they saw Winningham driving in the opposite direction (away from Matthews' house), but did not make any effort to stop him.

Mullins testified that while the deputies were escorting Matthews out of the county, he witnessed Winningham return to Matthews' home carrying a large container and leave without the container, 3 to 4

---

2. As a matter of Tennessee law, a law enforcement officer *shall* arrest a suspect without a warrant if the officer has verified that an order of protection is in effect against the suspect and if the officer has reasonable cause to believe that the suspect has violated the order of protection. Tenn.Code Ann. § 36–3–611.

minutes later. Mullins reported this observation to the deputies when they picked him up, but did not recall their responses. Peek and Dowdy testified differently. They testified that Mullins did not mention that anything significant had happened at the house while they were gone. Peek testified that Mullins did not tell Peek what he had witnessed until later that evening, at the fire scene.

In any event, when the two deputies returned to Matthews' home to pick up Mullins, they did not physically inspect the Matthews' home for any sign of forced entry or arson. The deputies did shine a spot light from the road and did not notice anything unusual. The deputies dropped Mullins off at the courthouse and went home.

Later that night, Matthews' home was burned to the ground destroying her personal possessions. At the divorce hearing the next day, Judge Turnbull learned what had happened and ordered the Sheriff's Department to arrest Winningham for violating the Order of Protection and for arson. Winningham finally was arrested on November 19, 1993. A contempt hearing was held at which Judge Turnbull heard proof, made findings of fact and awarded Matthews' $30,000 in property damages due to Winningham's contumacious conduct (Plaintiff Exhibit No. 2a, Transcript at pp. 124–26).

Sheriff Dowdy, Deputy Dowdy, Peek, Mullins and Martin all knew Winningham and his reputation for violence when he drinks. Further, Dowdy knew Winningham was a convicted felon, operated a bar in Pickett County, and had previously possessed weapons.

As a result of these events, Dr. Jack C. Smith, a physician, treated Matthews and prescribed medications to control her anxiety and enable her to sleep (Plaintiff's Exhibit No. 6 at the November 8, 1995 trial). Dr. Smith testified that he had been Matthews' treating physician since April, 1989 and has treated her on several occasions. On October 18, 1993, Dr. Smith saw Matthews who reported that her husband beat her. Dr. Smith prescribed Restorel to enable her to sleep and Triaovil, a tranquilizer and antidepressant four times a day with three refills.

In December, 1993, Dr. Smith saw Matthews again after the fire with her complaints of nervous tension, restlessness, shaking and distraught feelings. In a word, Dr. Smith described Matthews as "a basket case" and "in a bad state." *Id.* at p. 23. Dr. Smith's diagnosis was "acute tension/depression." *Id.* at p. 20. In addition to Restorel, Dr. Smith prescribed Zoloft, a powerful antidepressant and Xanax for her nerves. According to Dr. Smith, Matthews' condition was due to her husband's abuse, the destruction of her property, the fire and her fear for her life. *Id.* at p. 22.

Matthews moved to Alabama after these events and continued to suffer from bouts of depression. At one point, Matthews lost twenty pounds and also had significant hair loss. Matthews has nightmares about these events, does not sleep well and suffers from crying spells. Matthews has lost faith in police officers to protect her and kept a gun near her bed.

Victor Watson, Matthews' son, has lived with his mother since November, 1993 and earlier in 1990 and 1991. Watson verified his mother's lack of sleep, nightmares and her bald spot from her hair loss. His mother's nightmares are about someone coming to get her. His mother also becomes very anxious when she sees smoke and remains fearful of the police. Winningham was shot and killed in July, 1999.

### B. CONCLUSIONS OF LAW

█ As a diversity action, state law governs the parties' claims and defenses. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58

S.Ct. 817, 82 L.Ed. 1188 (1941). For the analysis of the parties' claims and defenses, the Court commences with a review of the conclusions of the Tennessee Supreme Court in the first appeal. The Tennessee Supreme Court adopted the findings of the District Court.

> The 'District Court found that despite [the] abundance of probable cause to arrest Mr. Winningham for violating the order of protection, the deputies failed to arrest [him] and "went home and went to bed." We agree with the district court's holding.
>
> \* \* \* \* \* \*
>
> The record supports a finding that the deputies' failure to arrest Winningham was a deviation from a policy as expressed by statutory mandate and was operational in nature.

996 S.W.2d at 164. The Court then concluded that the special duty exception did apply to Matthews' circumstances. *Id.* at 165.

Yet, the Tennessee Supreme Court made it clear that the other provisions of TGTLA remained applicable to Matthews' claims.

> The public duty doctrine defense is subject to the special duty exception. *The special duty exception* does not create liability but *operates to negate the public duty doctrine defense and allows a plaintiff to pursue a viable cause of action under GTLA.*
>
> \* \* \* \* \* \*
>
> *The cause of action is controlled strictly by the provisions of the GTLA once the public duty doctrine defense has been negated.* Accordingly, *the respondents may be subject to liability under the provisions of the GTLA for damages proximately caused by a breach of the special duty.*
>
> The deputies had a duty to arrest Winningham if there were reasonable cause to believe that Winningham had violated

the order of protection. Tenn.Code Ann. § 36–3–611. *If the deputies breached the duty owed to Ms. Matthews, she may recover damages proximately caused by that breach, to the extent permitted by the provisions of the GTLA.*

## CONCLUSION

Based on the limited facts certified to this Court and on the question posed to this Court, we hold that the special duty exception to the public duty doctrine is applicable and that the respondents may be subject to liability under the GTLA. *Id.* at 165.

Matthews' claims are for negligence under the TGTLA, Tenn.Code Ann. § 29–20–101, *et seq.* and for the wrongful acts of deputies under T.C.A. § 8–8–302 that addresses non-negligent misconduct of deputies appointed by a sheriff. *See Jenkins v. Loudon County,* 736 S.W.2d 603, 609 (Tenn.1987).

Under TGTLA, a plaintiff can sue a local governmental entity for an injury proximately caused by a negligent act or omission of its employees within the scope of his or her employment. Tenn.Code Ann. § 29–20–205. Yet, the governmental entity is immune if the injury arises out of one of several enumerated exceptions that are, in pertinent part, as follows:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury:
>
> (1) Arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused;
>
> (2) Arises out of . . . infliction of mental anguish . . .

T.C.A. § 29–20–205(1) and (2). As noted earlier, the Sixth Circuit appeal addressed the applicability of § 29–20–205(1).

■ With this remand, the defendants argue that Pickett County is immune from any claim by Matthews for damages for mental distress, citing *Lockhart v. Jackson–Madison County Hospital,* 793 S.W.2d 943 (Tenn.Ct.App.1990). In *Lockhart,* the Tennessee Court of Appeals considered plaintiff's claims under TGTLA against a public county hospital, jointly operated by the county and the city of Jackson, as well as the county and city for their hospital employees' negligence in allowing their child to be abducted from the hospital. The Court ruled, among other things, that under Tenn.Code Ann. § 29–20–205(2) that

> The language of the statute is clear and unambiguous that the legislature did not remove governmental immunity for any injury which arises out of mental anguish. We believe the plain language of the statute justifies no other construction of the legislature's intent.

*Id.* at 945–46.

■ Thus, under this Tennessee statute, Tenn.Code Ann. § 29–20–205(2) and the holding in *Lockhart,* Matthews can only be awarded damages for loss of her property for which the County can be held liable. The Tennessee Supreme Court and the Sixth Circuit also concluded that Matthews is entitled to her property damages. This Court concludes that Matthews' property damages include the loss of her home, her personal property due to the fire set by Winningham, and the loss of her horses, as well as the damage to her vehicle. This Court adopts as the measure of those damages, $30,000, the amount found by Judge Turnbull at the conclusion of his hearing on November 23, 1993 (Plaintiff's Exhibit 2A at pp. 125–26). Thus, Matthews is entitled to a damages award of $30,000 against the County.

■ Although the defendants calculate Matthews' property damages differently, the Court treats the prior state court finding with deference. Winningham testified at that hearing that "I would value [the house] at like $30,000" (Plaintiff's Exhibit No. 2 at p. 120)[3]. Matthews testified that she bought the home for $18,500 but had "done a lot of work on it," "at least $5,000." *Id.* There was other personal property damage of $8,000 to $10,000 dollars. *Id.* at 112. The insurance proceeds were $18,500, but had not been paid.[4]

The next issue is whether the individual defendants Peek and Dowdy are absolutely immune from any award of damages. There are four statutes that are relevant to this question. Under the TGTLA, there are three relevant statutes that provide as follows:

> No claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is

---

3. This testimony of Matthews, as the owner of this property, is sufficient under Tennessee law to establish these damages. *Haynes v. Cumberland Builders, Inc.,* 546 S.W.2d 228, 234 (Tenn.Ct.App.1976). At the trial on remand, defense counsel mischaracterized Matthews' prior testimony that she based her prior testimony on the damages to her home on replacement costs. The only possible reference to replacement costs at the state court hearing was that the amount of insurance would not rebuild the house (Plaintiff's Exhibit No. 2 at p. 121).

4. For tort claims, such as here, Tennessee law follows the collateral source rule that does not consider such insurance policies in determining damages. See *Globe & Rutgers Fire Ins. Co. v. Cleveland,* 162 Tenn. 83, 34 S.W.2d 1059, 1060 (1931). In any event, the state court did allow proof of the insurance coverage and appears to have considered the amount of the insurance policy in awarding damages. (Plaintiff's Exhibit No.2 at p. 121).

removed by this chapter unless the claim is one for medical malpractice brought against a health care practitioner. No claim for medical malpractice may be brought against a health care practitioner or judgment entered against a health care practitioner for damages for which the governmental entity is liable under this chapter, unless the amount of damages sought or judgment entered exceeds the minimum limits set out in § 29–20–403 or the amount of insurance coverage actually carried by the governmental entity, whichever is greater, and the governmental entity is also made a party defendant to the action.

Tenn.Code Ann. § 29–20–310(b).

No claim may be brought against an employee or judgment entered against an employee for injury proximately caused by an act or omission of the employee within the scope of the employee's employment *for which the governmental entity is immune in any amount in excess of the amounts established for governmental entities in § 29–20–403 unless the act or omission was willful, malicious, criminal or performed for personal financial gain,* . . .

Tenn.Code Ann. § 29–20–310(c) (emphasis added).

No judgment or award rendered against a governmental entity may exceed the minimum amounts of insurance coverage for death, bodily injury and property damage liability specified in § 29–20–403, unless such governmental entity has secured insurance coverage in excess of said minimum requirements, in which event the judgment or award may not exceed the applicable limits provided in the insurance policy.

Tenn.Code Ann. § 29–20–311.

■ A fourth statute that is relied upon by Matthews is Tenn.Code Ann. § 8–8–302.

**Suits against counties for wrongs of deputies.**—Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the apart of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office.

This latter statute has been construed, together with TGTLA, to apply to non-negligent or intentional acts of deputy sheriffs, *Jenkins,* 736 S.W.2d at 609 ("Actions for the non-negligent misconduct of deputies do not 'aris[e] pursuant to' the GTLA, T.C.A. § 29–20–104(b), and may therefore be covered by T.C.A. § 8–8–301 *et seq.* in appropriate cases"). As discussed *infra,* the facts found by the Court establish negligence and thus, those facts render this latter statute inapplicable here.

As to the construction of § 29–20–310(b) upon which Peek and Dowdy rely for their defense of absolute immunity, the Court of Appeals in *Erwin v. Rose,* 980 S.W.2d 203 (Tenn.Ct.App.1998) considered claims, including a TGTLA claim, against a deputy sheriff involved in a high speed chase that resulted in the death of the plaintiffs' child. The Court referred to "the rather confusing language in Tenn.Code Ann. § 29–20–310(c)" that "should be read in conjunction with Tenn.Code Ann. § 29–20–310(b)." 980 S.W.2d at 205, 206. As to the immunity of the deputy sheriff, the Court concluded:

Reading the two sections together, it is obvious that the legislature wished to limit the exposure of municipal employees while it selectively removed the immunity of the municipality itself. It did so in two ways: (1) by giving the employee absolute immunity in cases where the municipality's immunity was removed (subsection (b)), and *(2) by limit-*

*ing the employee's liability in cases in which the municipality was yet immune to the limits in Tenn.Code Ann. § 29–20–403—unless the employee's acts were willful, malicious, criminal or performed for personal financial gain (subsection (c)).*

The county's immunity for injuries caused by the negligent operation of an automobile has been removed by Tenn. Code Ann. § 29–20–202. Thus, if we are correct in our interpretation of Tenn. Code Ann. § 29–20–310(b), Deputy Rose has an absolute immunity for the acts that led to the county's liability.

*Id.* at 206. (emphasis added).

The Sixth Circuit has similarly construed TGTLA to conclude that an individual deputy remains subject to personal liability, if the County is immune. *Doe v. Sullivan County, Tennessee,* 956 F.2d 545, 553 (6th Cir.1992):

Plaintiff submits that under section 29–20–310(b), Gardner and Hawkins would be liable under state law for any amount exceeding the $40,000 limit of Sullivan County's liability. This interpretation finds strong support in *Jenkins v. Loudon County,* 736 S.W.2d 603, 606 n. 5 (Tenn.1987) which held that, under section 29–20–310(b), "[t]he general rule of personal liability of governmental employees continues for all liability exceeding any limited statutory exposure."

… [W]e agree that defendants Gardner and Hawkins could be liable for any state law award in excess of the $40,000 cap …

*Id.*

■ The Tennessee legislature is presumed to be aware of these judicial constructions of the TGTLA by *Erwin* and *Doe. Lockhart,* 793 S.W.2d at 945, but have not amended TGTLA to reverse these rulings. Applying *Erwin,* because the County is immune from any claim for emotional distress, the defendants Peek and Dowdy

are liable for such damages and are not entitled to absolute immunity that attaches only if the County were liable for these damages.

■ The Court finds that the facts establish that the defendants Peek and Dowdy were seriously negligent in their failures to honor the State Court's Order of Protection for Matthews. These defendants' failures to arrest Winningham were the proximate causes of the injuries to Matthews, including her mental distress.

■ On the issue of causation, the defendants argue that Tennessee law excuses negligence of a party, if an intervening cause is the actual source of the injury, citing *Moody v. Gulf Refining Co.,* 142 Tenn. 280, 218 S.W. 817, 820 (1920) and *Louria v. Brummett,* 916 S.W.2d 929 (Tenn.Ct.App.1995). Thus, these defendants argue that Winningham's acts excuse their negligence. In these cited cases, the defendant did not have any relationship with the persons whose intervening acts actually caused the plaintiff's injury. In contrast, the omissions of Peek and Dowdy are inextricably intertwined with what Winningham did. If Peek and Dowdy had arrested Winningham on their initial contact at Matthews' residence, as required by the State Court's Order of Protection, Winningham could not have caused the fire and other damage that he inflicted later that night. The Court deems *Moody* and *Louria* to be factually inapposite.

As to an award of damage for emotional distress, in *Miller v. Willbanks,* 8 S.W.3d 607 (Tenn.1999), the Tennessee Supreme Court conducted a historical review of its precedents in recovery of damages for emotional distress. Significant here is the Court's observation that in 1888, that Court "permitt[ed] plaintiff to proceed with suit for injury to the "feelings, anguish and pain of mind" based on defen-

dant's failure to comply with statutory obligations" *Id.* at 610, citing *Wadsworth v. Western Union Tele. Co.,* 86 Tenn. 695, 8 S.W. 574 (1888).

In recent times, the Tennessee Supreme Court altered its prior rule that to recover for such injuries, the plaintiff had to have a traditional legal claim or physical injury, and now required only that the plaintiff present "material evidence as to each of the five elements of general negligence." *Camper v. Minor,* 915 S.W.2d 437, 446 (Tenn.1996) *Accord Ramsey v. Beavers,* 931 S.W.2d 527, 531 (Tenn.1996). In *Miller,* the Tennessee Supreme Court ruled that medical expert testimony was not required to recovery for mental distress, adopting the majority rule of the other states and noting that "[t]he outrageous nature of the conduct ... vitiates the need for expert testimony ..." 8 S.W.3d at 613, 614.

 This Court applies the Tennessee Supreme Court's ruling that these defendants owed Matthews a legal duty of special protection. *Matthews,* 996 S.W.2d at 165. This Court finds from the evidence in this record that Peek and Dowdy breached that duty and their omissions were the causes in fact and proximate causes of Matthews' resulting injuries. Dr. Smith's proof clearly satisfies the causal connection of Winningham's acts in setting the fire to Matthews' mental condition and the other facts show Dowdy's and Peek's obvious neglect of their duty to Matthews to arrest Winningham. As to the bases for the mental distress injury, under *Miller,* "a claimant's own testimony ... as well as the testimony of other lay witnesses acquainted with the claimant" can satisfy the plaintiff's burden of *proof.* 8 S.W.3d at 614.

 Matthews' testimony about the effects of this tragic episode upon her is corroborated by the testimony of Watson, her son and Dr. Smith. These testimonies establish Matthews' weight and hair loss, her deep anxiety for her personal safety that are the results of the fire and resulting violence of her late husband after Peek and Dowdy failed to arrest him, despite the State Court's Order of Protection. To be sure, Winningham's earlier abuse of Matthews is also an important fact in her mental condition, but Peek's and Dowdy's omissions clearly aggravated her mental condition causing additional pain for years as these defendants were the persons whom the State Court expected to protect Matthews from what occurred.

The defendants also argue that damages for mental distress are not recoverable in connection with a claim for loss of property, such as here, citing *Lance Productions v. Commerce Union Bank,* 764 S.W.2d 207, 213 (Tenn.Ct.App.1988) and *Phillips v. Taylor,* 833 S.W.2d 927, 934 (Tenn.Ct.App. 1992), as well as decisions from other jurisdictions.

In the earlier appeal, the defendants argued that Matthews could not recover for loss of property damage, but the Tennessee Supreme Court disagreed stating: "The focus is upon the relationship between the parties and not upon a specific harm." *Matthews,* 996 S.W.2d at 165.

 Applying this principle here, the "relationship between the parties" here arose out of a special duty to protect created by the State Court Order of Protection. Matthews' claim is for a breach of that duty and is not a loss of property claim. Matthews' loss of property as well as her personal injury for mental distress are but elements of her damages for Matthews' claim for breach of a special duty of protection. Under Tennessee law, compensatory damages are for injuries and "for all the harm that follows [the defendants'] wrong." *Smith v. Gore,* 728 S.W.2d 738, 749 (Tenn.1987) (quoting *Black v. Love & Amos Coal Co.,* 30 Tenn.App. 377, 383, 206

S.W.2d 432, 434 (1947). This includes damages for mental distress). *Id.* at 751. *Lance Productions* and *Phillips* involving claims for property loss are factually inapposite.

As to damages, under Tenn.Code Ann. § 29–20–310(a) and (b), the limits of any liability of defendants Peek and Dowdy are subject to the limitations of § 29–20–403 for their negligent omissions. The latter statute provides that for personal injuries arising on or after July 1, 1987, the County maintain insurance for the "Minimum limits of not less than 130,000 for bodily injury ... of any one (1) occurrence ..." Tenn.Code Ann. 29–20–403(b)(2)(A) (Supp.1999). Jack Whittenberg, County Executive for Pickett County, testified that the County maintains insurance in the amount of $130,000 for personal injury claims. The Court concludes that under the facts of this case and given the serious emotional injury suffered by Matthews for several years after the November 1993 fire until the death of her husband in 1999, Matthews is entitled to $130,000 in damages against Peek and Dowdy for her emotional distress suffered by her due to their negligent omissions.

An appropriate Order is filed herewith.

### ORDER ON MOTION TO ALTER OR AMEND

Before the Court is the defendants' motion to alter or amend (Docket Entry No. 116), the Court's Memorandum and Order (Docket Entry Nos. 111 and 112), that set forth the Court's findings of fact and conclusions of law on the parties' claims and defenses after the bench trial. The Court found for the plaintiff and awarded the plaintiff $30,000 against the defendant Pickett County and $130,000 against the defendants Larry Peek and Dana Dowdy,

The defendants' motion argues that the Court erroneously interpreted the provisions of the Tennessee Governmental Tort Act ("TGLA"), Tenn.Code Ann. § 29–20–310; that the Court's findings are contrary to the weight of the evidence; and that the damages awarded to the plaintiff are excessive.

In opposition, the plaintiff argues that under TGLA, as interpreted by Tennessee courts, because the defendant Pickett County is immune from liability for claims for mental distress, this Court correctly interpreted TGLA and Tennessee law to find the individual defendants liable for plaintiff's claims for mental distress (Docket Entry No. 120). Plaintiff also argues that the damages awarded are consistent with the evidence and are not excessive. *Id.*

The defendants' motion to alter or amend is **GRANTED** in part and **DENIED** in part. The motion is **DENIED** in that the Court again concludes for the reasons set forth in its earlier Memorandum that under *Erwin v. Rose*, 980 S.W.2d 203, 205 (Tenn.Ct.App.1998), for the plaintiff's mental distress claim, because the defendant Pickett County's immunity is removed under the TGLA, the individual defendants, as employees of a local governmental immunity, can be held liable for such claims. The Tennessee General Assembly has not altered the Tennessee Court of Appeals' interpretation in *Erwin*. This Court concludes that it correctly applied TGLA and Tennessee law.

The motion is **GRANTED** in that the Court does alter its earlier conclusion to find that a portion of the defendants Larry Peek's and Dana Dowdy's omissions were intentional omissions. As set forth in the Court's earlier findings of fact, even after the state judicial officer informed Peek and Dowdy that they did not need an arrest warrant to arrest the plaintiff's husband and after these defendants had received the plaintiff's statements of her ex-

husband's violent acts, these defendants still did not arrest the plaintiff's ex-husband when they saw him during their return trip to plaintiff's residence (Docket Entry No. 111 at pp. 7–8). These intentional omissions are in addition to their earlier negligent acts in failing to arrest the plaintiff's ex-husband after the plaintiff's initial report of her ex-husband's violent acts and threats in violation of the State Court Order of protection. Accordingly, for these intentional omissions, the defendants Peek and Dowdy can also be held liable under Tenn.Code Ann. § 8–8–302 for the amount awarded. See *Jenkins v. Loudon County*, 736 S.W.2d 603, 608–09 (Tenn.1987).

The damages awarded to plaintiff under either statute are not excessive for the reasons stated earlier by the Court. The defendants' other arguments were previously found without merit.

### ORDER ON NOTICE OF FILING OF RECENT DEVELOPMENT

Before the Court is the defendant's Notice of filing of recent development (Docket Entry No. 123), attaching thereto the Tennessee Supreme Court opinion in *Hill v. City of Germantown*, 31 S.W.3d 234 (Tenn. 2000). In this Notice, the defendants analyze *Hill* and argue that *Hill* "is strong authority to suggest that the individual defendants may not be personally liable in the case *sub judice*." *Id.* at 238–39. In view of the argument contained in this Notice, the Court deems the Notice to be a second motion to alter or amend.

As pertinent here, in *Hill*, the Tennessee Supreme Court considered the liability of an employee under the Tenn.Code Ann. §§ 29–20–310(b) and (c) of the Tennessee Governmental Tort Liability Act ("TGTLA"). *Hill* addresses a police officer's liability arising out of a high speed pursuit of a traffic violation. The police officer was charged with negligence in this high speed pursuit that resulted in a citizen's death.

First, the Tennessee Supreme Court stated: "We agree with the Court of Appeals' analysis of § 29–20–310(b) and (c) in *Erwin v. Rose*, 980 S.W.2d 203 (Tenn.Ct. App.1998). In *Erwin*, the plaintiffs argued that the governmental entity's employee should be personally liable for damages exceeding $130,000 despite the removal of the entity's immunity from suit." *Hill* at 239–40. Likewise, this Court followed *Erwin* on this issue (Docket Entry No. 111, Memorandum at pp. 15–17). Therefore, the Court concludes that its conclusion on the individual defendants' liability under TGTLA is consistent with *Hill*.

As to the individual public employee's liability for damages, in *Hill*, the Tennessee Supreme Court stated:

> We find the *Erwin* court's interpretation and construction of § 29–20–310(b) and (c) to be correct. Comparison of §§ 29–20–202 to—205 with § 29–20–310(b) and (c) also supports our conclusion that "immunity from damages" is not the intention of the statute. Each of the statutory provisions that operates to remove a governmental entity's immunity does so by removing "immunity from suit." *See* Tenn.Code Ann. § 29–20–202 (removing immunity from suit for negligent operation of motor vehicles); Tenn. Code Ann. § 29–20–203 (removing immunity from suit for injury from unsafe streets and highways); Tenn.Code Ann. § 29–20–204 (removing immunity from suit for injury from dangerous structures); Tenn.Code Ann. § 29–20–205 (removing immunity from suit for negligent acts of employees). Those statutes make no reference to "immunity from damages."
>
> *The type of immunity contemplated by § 29–20–310–(c) is immunity from*

*claim* or suit, not immunity from damages. Once a governmental entity has had its immunity from suit removed by §§ 29–20–202 to –205, it may no longer be considered immune for purposes of § 29–20–310(c) though it is not liable for some portion of the plaintiffs' damages. While it is not unreasonable to view the award caps of § 29–20–403 as somehow operating to "immunize" a governmental entity from paying damages in excess of the caps, that clearly is not the type of immunity contemplated in either § 29–20–3[10](b) and (c).

*Id.* at 239–40 (emphasis added).

Applying *Hill* here, the plaintiff's claim for mental distress is a separate and distinct claim. See *Miller v. Willbanks* 8 S.W.3d 607, 613–14 (Tenn.1999). Moreover, Tenn.Code Ann. § 29–20–205(2) expressly provides:

> *Immunity from suit of all governmental entities is removed* for injury proximately caused by a negligent act or omission of any employee within the scope of his employment *except if the injury:*
>
> (2) *Arises out of . . . infliction of mental anguish . . .*

(emphasis added).

By virtue of this statutory immunity, the defendant Pickett County enjoys an "immunity from [plaintiff's mental distress] claim". According to *Hill*, because the defendant Pickett County is immune from this emotional distress claim, then the individual defendants are personally liable for this claim subject to the statutory limit in TGTLA.

Thus, the Court concludes that *Hill* is consistent with this Court's earlier ruling and does not dictate a different result. This *de facto* motion to alter or amend (Docket Entry No. 123) is DENIED. This is the Final Order in this action. It is so ORDERED.